WYLLIS V. HAUN ET AL.

1. **Acknowledgment:** FORGED INSTRUMENT: LIABILITY OF OFFICER FOR FALSE CERTIFICATE. The defendant, a justice of the peace, took an acknowledgment of the assignment of a mortgage in the usual form, stating that the assignor was to him "personally known to be the identical person" whose name was signed to the instrument. The assignment proved to be a forgery: *Held*, that the defendant was not liable upon his official bond, under section 1964 of the Code, to one who purchased the mortgage and notes secured thereby, relying upon the validity of the assignment.

> *Argument*: The mortgage being a mere incident to the notes, the loss sustained by the purchaser was not the proximate result of defendant's act. Had the assignment been valid he would have acquired thereby no beneficial interest in the land without title to the notes; on the other hand if he had obtained a valid title to the notes the security would have passed to him by operation of law, notwithstanding the invalidity of the assignment.

*Appeal from Clinton Circuit Court.*

WEDNESDAY, MARCH 20.

EDWIN K. SCRANTON, of Brooklyn, New York, was the owner of 120 acres of land in Marshall county, in this State, which he sold to one Ambrecht. The sale was effected through James A. Bartlett, a real estate agent residing at State Center, in Marshall county. The deed conveying the land from Scranton to Ambrecht was sent by Scranton to Bartlett by mail. Bartlett delivered the deed to Ambrecht, and took from him two promissory notes amounting in the aggregate to $450, the same being for part of the purchase money. The notes were made payable to the order of Scranton. He also took from the purchaser a mortgage upon said land to Scranton, to secure the payment of said notes. Bartlett did not transmit the notes and

mortgage to Scranton, but retained them in his own possession, and in a short time thereafter went to the city of Lyons, in this State, and representing himself to be Edwin K. Scranton he forged an assignment of said mortgage and indorsements upon said notes, to one Albert Edgitt. Edgitt took the notes and mortgage to Marshalltown, in this State, and indorsed the notes and assigned the mortgage to the plaintiff, for a consideration of $385.

The certificate of acknowledgment to the false and forged assignment of the mortgage was made by the defendant, Haun, as a justice of the peace. The body of the certificate is in these words:

"Be it remembered that on this 26th day of October, 1874, before me, the undersigned, T. S. Haun, a justice of the peace, in and for said county, personally appeared Edwin K. Scranton, to me personally known to be the identical person whose name is affixed to the foregoing assignment as grantor, and acknowledged the said instrument to be his voluntary act and deed."

The plaintiff brought this action against the defendants upon the official bond of said defendant, and sought to recover the amount paid for said notes and mortgage, and averred that in said certificate of acknowledgment the said Haun knowingly misstated material facts in this: that said Haun falsely certified that the person who made the assignment and acknowledgment was Edwin K. Scranton, and that Edwin K. Scranton was personally known to him to be the person whose name was affixed to the said assignment of the mortgage as grantor; that the plaintiff, relying upon the truth of said certificate, was induced to purchase said mortgage and notes given therewith, of the said Albert Edgitt, named in said false, forged, and fraudulent assignment. There was a trial by jury, and a verdict for the plaintiff.

Defendants filed a motion "in arrest of judgment, and to set said verdict aside, and for a new trial," which was sustained, and the court rendered a judgment against the plaintiff for costs. Plaintiff appeals.

*J. C. Wyllis* and *I. Munroe*, for appellant.

*Ellis & Spence*, for appellee.

ROTHROCK, J.—I.   The action was brought under Sec. 1964 of the Code, which provides that: "Any officer, who know-

1. ACKNOWL-
EDGMENT:
forged instru-
ment:liability
of officer for
false certifi-
cate.

ingly misstates a material fact in either of the certificates above contemplated, shall be liable for all damages caused thereby, and may be indicted, and fined any sum not exceeding the value of the property conveyed, or otherwise affected by the instrument on which such certificate is indorsed."

The certificates referred to in this section are certificates of acknowledgments to deeds, conveyances, or other instruments in writing by which real estate is conveyed or incumbered.   It does not appear in the evidence that the defendant, Haun, in making the certificate, acted corruptly, or that he was in any way a party to the forgery.   The most that can be claimed is that he certified that Edwin K. Scranton was personally known to him to be the person who executed the assignment, which was not true, and that he knew when he made the certificate that he had no personal acquaintance with said Scranton.

The evidence conclusively shows that the forgery and fraud was the result of a conspiracy between Bartlett and Edgitt. Edgitt was a young man of good character up to the time of this transaction.   He had been a resident of the same place with the defendant Haun; had studied law, and been admitted to practice, and he and Haun had been for a time law partners. He introduced Bartlett to Haun under the assumed name of Scranton, on the same day or the day before the certificate was made.   When Edgitt called upon Haun with Bartlett to have the acknowledgment taken he introduced Bartlett to another person as E. K. Scranton, and turned to Haun and said that he had an extensive acquaintance with Mr. Scranton some time before.   With this knowledge of the identity of the party Haun made the certificate, relying upon Edgitt, as he had always done before in business transactions.

If the defendant had made this certificate of acknowledgment to a conveyance of real estate under these circumstances,. upon the faith of which certificate a purchaser had paid his money and suffered loss (it may be, but the point we do not decide), a court would not be justified in arresting a judgment and setting aside a verdict against him. In such case the person, who accepts the conveyance, and acts upon it, has the right to rely upon its genuineness. It is the very instrument which confers title to the land, and if the deed be a forgery the damages are caused by the misstatement of a material fact in the certificate of acknowledgment.

But the assignment of a mortgage is an instrument of an essentially different character. The mortgage is but a mere incident to the notes which it secures; the defendant can only be held liable for the direct consequences of his willful misstatement in the certificate. It is true the plaintiff was induced to purchase the notes upon the faith that the assignment of the mortgage was genuine; but the defendant did not certify that E. K. Scranton indorsed the notes, and he would not have been liable under the statute if he had done so, because they are not instruments affecting real estate. The legal effect of defendant's certificate was to make him liable to innocent purchasers of the mortgage only; his liability cannot be extended to include a loss because of a forged indorsement of the notes. The plaintiff's loss was not caused by the defective certificate of acknowledgment to the mortgage. If he had obtained title to the notes, the title to the mortgage would have passed to him without any written assignment. "The assignment of the debt, it is conceded as a general rule, draws after it the mortgage, as a consequence, or appurtenant to it." *Pope & Slocum v. Jacobus,* 10 Iowa, 262.

The converse of this, however, is not true. Suppose Bartlett had sent the notes to Scranton and retained the mortgage, and made this false and forged assignment and sold it to the plaintiff; the plaintiff would have had no remedy against the officer who took the acknowledgment, because if the assignment had been genuine he would have had no beneficial in-

terest, nothing but a mere naked trust. *Pope & Slocum v. Jacobus, supra.*

The most that plaintiff can claim is that he inferred, from the certificate of acknowledgment, and the signature to the assignment of the mortgage, purporting to be that of Scranton, that the indorsement of the notes, in the same handwriting, was genuine. Haun should not be held liable for that inference.

The statute upon which the action is based is of a highly penal character. If the defendant be liable in a civil action, the same state of facts authorizes an indictment, and punishment; measured by the value of the property affected by the misstatement knowingly made. Liability under this statute should be held to include only such damages as are directly caused by the wrongful act, and necessarily connected with it. As the loss was occasioned by the plaintiff's failure to obtain title to the notes, it cannot be said that this failure was caused directly by the defendant's wrongful act.

In our opinion, as a question of law, the plaintiff cannot recover, and the court did not err in arresting the judgment, setting aside the verdict, and rendering judgment against the plaintiff for the costs.

AFFIRMED.

DAY, J.—I concur in the view that the court properly arrested judgment and set aside the verdict, but I base my conclusion upon grounds different from those assumed in the foregoing opinion. The statute under which this action is brought, Code, Sec. 1964, is as follows: "Any officer who knowingly misstates a material fact in either of the certificates above contemplated shall be liable for all damages caused thereby, and may be indicted and fined any sum not exceeding the value of the property conveyed, or otherwise affected by the instrument on which such certificate is indorsed." The defendant asked the court to give the jury the following instructions: "Our law provides that any officer who *knowingly* misstates a material fact in a certificate of acknowledgment, etc., as herein before recited. Now, what is meant by the

words knowingly misstates, as they occur in the foregoing sections of the statute, is stating what the officer knows to be untrue, to intentionally state an untruth, to certify to a falsehood.

"It is not the simple statement of that which is not a fact, or the statement of the existence of something which in fact does not exist, but the statement of that which is not a fact knowing it not to be a fact, and the statement of the existence of something which he knows does not exist. So, if you find from the testimony that the defendant had met the person who called himself Scranton on a day previous to the day on which he took the acknowledgment, and was introduced to him by that name, and made acquainted with him by that name by a person in whom the defendant placed implicit confidence, introduced by Albert Edgitt, who was a lawyer and member of the same bar with said defendant, who was the trusted friend and former partner of defendant, and if you further find that defendant was led to regard, and did regard, said person as one who had come to the town of Lyons to establish himself in the practice of the law as a partner of the said Edgitt, and if you further find from the testimony that Edgitt assured the defendant, or gave him to understand, that he, the person calling himself Scranton, was an old acquaintance of his, reliable and respectable; and if you further find that when the person calling himself Scranton appeared before Haun, defendant, to have his acknowledgment taken, the said Edgitt accompanied him, thus sanctioning by his presence and by his purchase of the notes and mortgage in question the genuineness of the man as the true and real Edwin K. Scranton, then it is for you to say from the foregoing circumstances whether the defendant had a right reasonably to assume, or assert, or claim personal knowledge upon the strength of said circumstances, and if you find that he had, or answer said question in affirmative, then it cannot be predicated or charged in respect to the transaction that the defendant knowingly misstated a material fact in the said certificate of acknowledgment in representing himself as having personal knowledge of said person's identity with the real Scranton."

"6. The question is not whether the defendant actually had personal knowledge of the identity of the person before him as the real Edwin K. Scranton, but whether defendant believed he had such knowledge, and in determining whether or not the defendant so believed you must determine whether or not all the facts, declarations, and circumstances tending in that or the other direction were likely to impress that belief upon his mind, and if you find that such belief was impressed upon his mind that he had such personal knowledge, then certifying to the identity of the person before him, on the ground of personal knowledge, cannot be designated as certifying falsely, and your verdict must be for the defendant."

The court refused to give these instructions. The defendants excepted and made such refusal one of the grounds of their motion in arrest of judgment, and for a new trial. There was evidence before the jury tending to prove, and even establishing by a preponderance of evidence, the facts collated in these instructions. In my opinion they present the proper construction of the statute, and should have been given.

If it was error to refuse these instructions the court properly arrested judgment and set aside the verdict, although a wrong reason may have been given for this action. It is to be observed that the same act which renders the officer liable for damages in a civil action also makes him a criminal and subjects him to a fine. This act is *knowingly* misstating a *material fact* in the certificate. In our ordinary intercourse with our fellow men we become acquainted with strangers through introduction by our acquaintances. When we have such introduction through one whom we have long known, and believe to be honest, we do not hesitate to believe, nor scruple to state, that we personally know the person to be the person represented. It is an every day occurrence that the person having received such introduction introduces the stranger to his friends. I doubt whether it ever occurred to any one making such introduction that he was knowingly misstating a fact as to the personal identity of the person introduced. It will not do to introduce into the law a rule of conduct entirely at variance with the uniform custom of society and the ordin-

ary habits of reasonably careful and prudent men. Such a construction would operate as a snare, not for the unwary only, but for the reasonably careful and prudent. No rule of law which demands a greater degree of care and circumspection than the ordinarily diligent and prudent usually employ is adapted to man's nature, or can command respect.

The statute requires that the certificate of acknowledgment shall state that the person making the acknowledgment was personally known to the person taking it. The statute does not require acquaintance. A mere introduction would not make one acquainted with the person introduced. Acquaintance is familiar knowledge, a state of being acquainted, or of having intimate, or more than slight or superficial knowledge, as, *I know* the man, but have no *acquaintance* with him. See Webster's Dictionary.

No arbitrary time after an introduction can be fixed which will justify a person in saying *I know that man.* The defendant might have met the man represented to be Scranton every day for a year, and yet have no further knowledge that his name was Scranton than that derived from the first introduction by Edgitt. If he had so met him every day for a year, and believed him to be Scranton, would he have been liable to civil damages, and to indictment, if he had certified that he was personally known to him to be Scranton? And, if not, would not the same rule apply if he had met him for a month or a week, or even for but one day before? Whilst the statute requires the officer to state that he personally knows the person making the acknowledgment to be the person whose name is affixed to the instrument, yet he is not liable civilly and criminally from the simple fact that the statement turns out to be untrue. In order to create this liability the false statement must be knowingly made. That is, the officer must certify that the person was personally known to him, when he knows that he was not personally known to him. If an officer from all the circumstances has reasonable grounds to believe, and does believe, that he personally knows a man, then he cannot *know* that he does not know him. It is impossible that a man should really believe a fact to exist, and at the same time know it not to

exist. In *Wood et al. v. Bach*, 54 Barbour, 134, a notary took an acknowledgment of parties whom he had never seen before upon their being introduced to him by a mutual acquaintance, at the time he took the acknowledgment. It was claimed that the notary did not know the parties, and that hence there was no legal acknowledgment. It was held that the notary did know the parties and that the acknowledgment was good.

I feel satisfied that the court erred in refusing the instructions asked, and in giving others placing a contrary construction upon the statute, and that because of those errors the sustaining of the motion in arrest of judgment and for new trial must be affirmed. I think, however, the court should have ordered a new trial, and should not have rendered final judgment for defendants.