THE PEOPLE, FOR THE USE OF PETER DORAN, ADMINIS-
TRATOR, ETC., v. JOHN BUTLER.

*Principal and surety—Bond of notary public—Liability of surety.*

1. A surety upon a joint and several notary public's bond may be sued for a breach of its conditions without a prior adjudication against the principal, nor need he be joined as a defendant in such suit.

2. How. Stat. §§ 8230-8234, does not direct that the principal and surety in the bonds therein mentioned shall be sued together, but directs what shall be done in case of a joint judgment against both, and does not make it necessary to so join them.

3. The condition of the bond of a notary public, that he will faithfully discharge the duties of his office, is broken by his affixing a false certificate of acknowledgment to a mortgage, to which he has signed the names of the mortgagors without authority, and which he represents to the agent of the mortgagee, of whom he has negotiated the loan, as genuine both as to signatures and acknowledgment, whereby he receives the money, claiming to be the agent of the mortgagors for that purpose, the false certificate being the *proximate* cause of the injury.

Error to Kent. (Montgomery, J.) Argued February 15, 1889. Decided April 24, 1889.

Debt on notary public's bond. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Butterfield & Keeney* (*J. W. Ransom,* of counsel), for appellant.

*L. P. Eddy,* for plaintiff.

[The points of counsel are stated in the opinion.— REPORTER.]

LONG, J. This action is brought in debt upon the official bond of a notary public, against the surety on the bond, the principal not being made a party defendant. On the trial in the court below the plaintiff had judgment for the full penalty of the bond. Defendant brings error. The cause was tried before Judge Montgomery, of the Kent circuit, without a jury, and the court made the following findings of fact and conclusions of law:

"1. That one William Ashley was a duly-appointed notary public of Kent county, Mich., and the defendant, John Butler, signed his bond as surety, which bond was in the penal sum of $1,000.

"2. That said bond was dated February 6, 1877, and the condition therein was: 'Now, therefore, the condition of this obligation is such that if said William Ashley shall duly and faithfully discharge the duties pertaining to said office, then this obligation to be void; otherwise to be and remain in full force and effect.'

"3. That while Ashley's appointment was in force, to wit, in May, 1878, a mortgage of $1,500 upon land in Kent county, Mich., purporting to be executed by Franklin M. King and Ellen King, his wife, running to Charles J. Folger, mortgagee, was delivered to L. P. Eddy as agent of said Folger, plaintiff's intestate, together with a note purporting to be executed by said King, named in said mortgage, by said Ashley, who claimed to be the agent of his brother-in-law, said King, in making a loan upon said land; and upon the delivery aforesaid of said mortgage and note, said Eddy, as agent aforesaid,

delivered to said Ashley, claiming to be the agent of said King and wife, the consideration of said mortgage, to wit, $1,500, less the sum of $50, or thereabouts, retained by said Eddy for his charge in making said loan. Said Ashley was in fact the brother-in-law of one Franklin W. King; the wife of said King, whose name was Ellen B. King, being a sister of said Ashley.

"4. The said mortgage purported to be acknowledged before said Ashley, and the certificate of acknowledgment and signature thereto were in the handwriting of said Ashley, who stated to said Eddy, when delivering the mortgage as aforesaid, that he had taken the acknowledgment.

"5. That the signatures of said King and wife to said mortgage were forged; that the said mortgage was not executed and not acknowledged by said King and wife; and that the said certificate of acknowledgment was false.

"6. That said Eddy visited the premises described in said mortgage prior to the aforesaid delivery of the same, which premises were owned by Franklin W. King, and found them of sufficient value to make the proposed loan a good one based upon such security; and that in making the loan and delivering the money as aforesaid as agent of said Folger he relied upon the security of the farm, and parted with the said money because of the delivery to him of said mortgage purporting to be duly executed and acknowledged, and because he, the said Eddy, relied on the statement of said Ashley, that he, Ashley, was the agent of said King, and had authority to receive such moneys.

"7. That the plaintiff's intestate, nor any one in behalf of said estate, has not received the money—$1,500 —paid over as aforesaid by reason of said mortgage.

"8. At the time of the execution of the note and mortgage in question in May, 1878, Franklin W. King was worth at least $8,000 or $9,000, and was, and down to the time of the trial of this suit continued to be, abundantly responsible pecuniarily for the amount of such note, and such amount, if a legal obligation, could have been collected from him at any time, but beyond the value of the farm in question the pecuniary responsibility of said King was unknown to said Eddy.

"9. At no time in the course of the negotiations which led up to the making of the loan did said Eddy see or

have any communication with said Franklin W. King. Throughout the entire transaction said Eddy dealt with Ashley as the alleged agent of King, and in entire reliance on him as such, and in reliance on his possession of said mortgage, executed and acknowledged as aforesaid, but of the authority of said Ashley to act in behalf of said King in such matter, he, said Eddy, had no knowledge or assurance whatever other than the statement of said Ashley, and the possession of said note and purported mortgage executed as aforesaid.

"10. At the time of the paying over of the moneys said Eddy was informed by Ashley that King and his wife were in the city, at Ashley's house, within five minutes walk of Eddy's office, but said Eddy did not see or communicate with said King at all respecting the matter of said loan, nor, as appears, did he make any effort to do so.

"11. In addition to the note and mortgage before mentioned, there was also delivered by Ashley to Eddy an affidavit purporting to be sworn to by Franklin W. King and William Ashley, before one Henry F. Walch, a notary public of said county of Kent, which affidavit purported to explain certain facts in relation to the title to the premises described in the mortgage. This affidavit was delivered subsequent to the making of the loan, but pursuant to an understanding had at the time the money was paid. And the court finds that that affidavit was not sworn to by said King, but the signature of said King to said affidavit was forged.

"12. William Ashley, the notary public before whom the acknowledgment of the mortgage purports to be taken, was at the date thereof, and for some two years thereafter, a resident of the city of Grand Rapids, in the county of Kent. In 1880 he moved to Colorado, and has not resided in Grand Rapids since that time.

"13. At the time of the making of the loan said Eddy made no inquiries to ascertain who was in possession of the farm, and it does not appear that the said Franklin W. King did in fact at the time have the actual possession of such farm.

"CONCLUSIONS OF LAW.

"1. On the mortgage, as a whole, including the false certificate, must the liability of the defendant as bondsman of the notary be determined.

"2. The false certificate of the notary was a direct cause of plaintiff's intestate parting with his money.

"3. The other causes, as the execution of the forged note, etc., concurrent with the false certificate, did not prevent that cause being a proximate and direct one of injury in such a sense as that plaintiff's intestate might be held to have sustained the loss which he suffered by reason of such false certificate.

"4. The defendant is liable upon said bond to the amount of one thousand dollars, the penalty of said bond, and damages one thousand dollars."

The contention of the defendant is that under the circumstances no recovery can be had for the reasons:

1. That no prior adjudication has been had against the principal in the bond.

2. That he should have been joined as defendant in the action.

3. That the evidence does not show that the loss to the plaintiff's intestate arose from any breach of the bond.

4. That the loss, if the evidence of the plaintiff is true, arose from acts for which the defendant never undertook to be responsible.

We do not think there is any force in the proposition of counsel that a prior adjudication against the principal in the bond was necessary to the bringing of the suit, or that he should have been joined in the action. The bond is in the usual form, to pay to the people the sum of $1,000, to which the parties were jointly and severally bound; and, although not a money obligation, it comes within the rule that upon default of the principal action at once arises against the surety, and the principal debtor need not be sued before suing the surety, and neither need the principal be joined in the action. The statute to which counsel for defendant refers (How. Stat. §§ 8230–8234) does not direct that the principal and surety shall be sued together, but directs what shall be done in case of a joint judgment against both, and does not make it necessary to so join them. It has several times been

held in this State that suits against sureties on official bonds may be brought without joining the principal. *McCormick v. Bay City*, 23 Mich. 457; *Detroit v. Weber*, 29 Id. 24. In *Governor v. Perkins*, 2 Bibb, 395, it was held that, where a sheriff's official bond is joint and several, suit may be first brought against one of the sureties alone, without joining the sheriff as defendant. This rule is followed in *Smith v. Com.*, 59 Penn. St. 320; *Cummings v. Little*, 45 Me. 183. The same rule must be held to apply to the official bond of a notary public where the obligation is joint and several.

There is as little force in the proposition that there was no sufficient proof that Ashley, the principal in the bond, was a notary public. The bond is evidence of the fact, and the whole case was tried upon the theory that he was a notary, and nothing appears to contradict the fact.

The principal question in the case arises under the proposition of defendant's counsel that the false certificate was not the proximate cause of the injury. The facts upon which this claim is based are that Lawrence P. Eddy, the agent of plaintiff's intestate, an attorney residing in Grand Rapids, testified that in May, 1878, he was acting as agent for plaintiff's intestate in loaning money; that William Ashley, also an attorney of the same place, applied to him for the loan of $1,500 for his brother-in-law, Franklin W. King, on the farm of the latter in Grattan; that, in company with Ashley, he went to examine the farm, which he found to be an excellent one, and worth many times the amount of the mortgage; that he asked a hired man on the farm where Mr. King was, and was told he was in Belding. Abstracts were furnished, and May 25 was fixed for the parties to come to Grand Rapids. Witness then drafted the note and mortgage in question. On May 25 Ashley took the draft

of the note and mortgage, as he said, to his house on Fulton street, in Grand Rapids, where he claimed his brother-in-law was. In the afternoon of the same day Ashley came again to the office of Eddy, bringing the note and mortgage. He gave the note and mortgage to Eddy, and then agreed with Eddy to furnish him the affidavit of King and himself in reference to a break in the title, and Eddy then paid over to Ashley the $1,500 in money. It is insisted by counsel for defendant, under this state of facts, that the proximate cause of the loss of this money was the representation made by Ashley that he was the agent of King, and upon which statement Mr. Eddy claims to have relied. Counsel, in his brief, says:

"If plaintiff's testimony is true, the loss originated—

"1. Because of the forgery of the note, for, if it had been valid, every dollar of it could have been collected. From the day it was given up to the day of its maturity the maker of the note was perfectly responsible, and it could have been collected irrespective of the mortgage.

"2. Because Ashley falsely pretended to be the agent of Franklin W. King. Suppose King and his wife had executed the mortgage and note, and Ashley had, without authority, taken and delivered them to the agent of the plaintiff's intestate, and received the money as he did, the loss would have been precisely the same, and it would have arisen then, as it does now, from the failure of the plaintiff's intestate to investigate as to his authority."

We cannot say that under the supposed circumstances any loss would have occurred to the plaintiff. It would have depended upon other circumstances that might have surrounded the transaction as to the negligence of the mortgagor, and the authority, or want of authority, either express or implied, in Ashley to receive the money. Here the whole matter was a fraud. The mortgage and the note were forgeries. Ashley, who had committed the

'forgeries, was the notary, and the certificate of acknowledgment was untrue. The effect would have been the same if some other person had actually committed the forgeries, and imposed upon Ashley, who had *negligently* taken the acknowledgment of some persons, believing them to be King and wife. But Ashley was the notary, and by virtue of this official position he was enabled to carry forward the whole scheme, sign the name of King and wife to the note and mortgage, and, by making the false certificate, obtain the money.

Mr. Ashley is not charged in this action with a mere breach of duty or negligent conduct by which the plaintiff lost the money, but with using his official position to commit a fraud upon the plaintiff.

The plaintiff's intestate loaned the money in good faith, and in reliance upon the statement of Ashley that the mortgage was genuine, that he had taken the acknowledgment of it, and that he was the agent of the mortgagor to receive the money. He had possession of the papers. He had in fact made the loan. The agent of the plaintiff had known him for a number of years as an attorney and notary public. What more care or caution should the agent of plaintiff have exercised? It is an every-day occurrence that attorneys who are notary publics have the charge of papers, to deliver and close up transactions of great moment. The defendant is surety upon the bond of Ashley, which is conditional that he will faithfully discharge the duties of his office. If he had done so no loss would have occurred, as the mortgage, if produced, would have been genuine, and the certificate a true one. He actually obtained the money, and did it by means of his office enabling him to make a certificate of acknowledgment. This certificate is false, and the condition of his official bond is not kept and performed. He has not faithfully discharged the duties of his office, but has pros-

tituted it to obtain this money. If the surety on this bond could not be held liable under the circumstances here shown, then there is no safety to the public in official bonds. We think the proximate cause was the false certificate, and the defendant must be held liable.

In *Curtiss v. Colby*, 39 Mich. 458, an action was brought upon the official bond of a notary public, and this Court said:

" This is not a case where a mistake was made through inadvertence.   *   *   *   He certified that a certain person appeared before him and acknowledged the execution of the instrument, who did not in fact appear at all, and who had not even signed it. If he had read what he was certifying to he must have known that it was untrue in substance and in fact.   *   *   *   In such a case his object or motive need not be inquired into in an action brought to recover the actual damages sustained in consequence of his wrongful act."

What Ashley did in the present case he was enabled to do by reason of his official position,—his authority to take the acknowledgment of the mortgage. It does not lessen his liability on his bond because he coupled with the act of making the false certificate a false statement that he was the agent of King and wife to make the loan and receive the money. The mortgage and note would not have been taken by Eddy, nor the money paid, had it not been for the certificate stating that King and wife had acknowledged the execution of the mortgage. The very object of the bond is to obtain indemnity against the use of an official position for wrong purposes, and that which is done under color of office, and which would obtain no credit except from it appearing to be a regular official act, is within the protection of the bond, and must be made good by those who signed it. *People v. Treadway*, 17 Mich. 481.

We think the court below was correct in its conclusions of law, and the judgment must be affirmed, with costs.

SHERWOOD, C. J., CHAMPLIN and CAMPBELL, JJ., concurred. MORSE, J., did not sit.

---

74 652
83 350

74 652
84 641

74 652
104 370

74 652
f118 547

74 652
122 69
122 538

74 652
128 138
128 245

74 652
s42NW 384
s16ASR652
131 ²627

74 652
137 ¹41

74 652
147 ¹642

74 652
153 ¹83