## COFFIN *v.* BRUTON.

## Opinion delivered March 10, 1906.

NOTARY PUBLIC—NEGLIGENCE—PROXIMATE CAUSE.—A complaint against a notary public which alleges that defendant negligently affixed his official signature and seal to the affidavit of a soldier that he was entitled to an additional homestead entry under the United States laws, and to an assignment thereof, when in truth such affidavit and assignment were not signed by the alleged soldier, and that, relying upon the truth of defendant's certificate, plaintiff purchased such right, and thus lost the consideration paid therefor, was properly dismissed where it was neither alleged nor proved that the alleged soldier had in fact a right of additional homestead entry.

Appeal from Pope Circuit Court; *William L. Moose,* Judge; affirmed.

Coffin brought suit upon the official bond of Bruton, a notary public, alleging that Bruton, as such notary, affixed his seal and official signature to a document and affidavit purporting to have been executed before him by David Mayberry, Jr., late of Company G, Second Regiment Arkansas Infantry Volunteers. That said document was headed "Assignment," and in which said Mayberry purported to have made statements as to his service in the United States army, and to the fact that he, prior to 1874, made a certain homestead entry under the United States homestead laws of less than 160 acres; also purporting to have assigned by said document, headed "Assignment," his right to a soldier's additional homestead right; that said notary in his official capacity also affixed his signature and seal of office to a certain other affidavit purporting to have been executed by said Mayberry, in which said Mayberry purported to have sworn, among other things, to his army service, and to the fact that he, prior to 1874, made a homestead entry under the laws of the United States of less than 160 acres, as well as to the fact that he had not previously assigned his right to a soldier's additional homestead right and the assignment thereof; also to a certain other affidavit which purported to have been signed and sworn to by J. W. Hodge and Lizzie Hodge, which affidavit was in corroboration of the affidavit of said Mayberry; that these affidavits were in proof of and to establish the right of the said Mayberry to a soldier's additional home-

stead right; that the said notary on the 22d day of March, 1905, affixed his official signature and seal of office to the said assignment, certifying that the said David Mayberry, Jr., was personally well known to him, and that he had on the 22d day of March, 1900, personally appeared before him as such notary and signed and acknowledged said assignment before him; that said notary on the said 22d day of March affixed his official signature and seal of office to a jurat, certifying that said parties signed and swore to said affidavits before him on said date; that said certificates and jurats were in fact false; that said Mayberry or J. W. Hodge, or Lizzie Hodge never appeared before said Bruton as such notary and did not execute said assignments and affidavits before him as therein stated. That said assignment and affidavits, if true, would have established the right of said Mayberry to a soldier's additional homestead right under the laws of the United States. That, relying on the truth of the said certificate and the proper execution of the said document, he purchased the said soldier's additional homestead right of said Mayberry from R. D. Hamm on the 5th day of April, 1900, and paid him therefor the sum of two hundred and seventy-seven dollars ($277.00). That, by reason of the falsity of the said certificate and negligence of the said notary in negligently certifying the proper execution of the said papers before him, he was imposed upon by the said R. D. Hamm, and paid him the sum of two hundred and seventy dollars ($270.00) for the said soldier's additional right of the said Mayberry. That, owing to the said negligence of the said notary, and the fact that the said Mayberry, Hodge and Hodge did not appear before him as certified and execute the said papers and affidavits, he acquired no right by reason of said purchase, and that the consideration paid by him for said right was wholly lost.

Wherefore plaintiff prays judgment for two hundred and seventy-seven dollars and interest.

Defendant Bruton demurred to the complaint, and, on the overruling of the demurrer, answered, denying the allegations of negligence.

It was agreed that Coffin purchased the soldier's additional homestead right of David Mayberry, Jr., late of Company G, Second Arkansas Infantry Volunteers, on the — day of April, 1900, paying $277 for said claim; that the assignment was in

blank, and that the papers in proof of said right, as well as the assignment, were executed before J. H. Bruton, who was at the time a regularly appointed and duly qualified and commissioned notary public; that he as such notary public affixed his signature and seal of office to a certificate attached to said assignment and affidavit of said Mayberry, certifying that said Mayberry appeared before him and signed and acknowledged said assignment and affidavit as therein stated, and also attached his signature and seal of office to a certificate to the affidavits purporting to have been signed by J. W. and Lizzie Hodge, certifying that they appeared before him and subscribed and swore to the said affidavits as therein stated; that a copy of said assignment and affidavits were attached as part of the evidence; that said assignment and affidavits purporting to have been executed before said Bruton, if true, would have established the right of said plaintiff, as assignee, to the soldier's additional right of the said Mayberry; that said Mayberry did not appear before said Bruton, having died in 1879; that R. D. Hamm, one of the defendants, was the seller of said claim; that he came to said Bruton with three parties on said date, one of whom he introduced as said Mayberry, and the others as J. W. and Lizzie Hodge; that said Bruton had no knowledge of the said Mayberry or parties brought before him, but had known said Hamm, in whom he had confidence, for many years; that said parties signed and acknowledged said assignment and affidavits, and that said Bruton did not take the sworn identification of said parties by any person whom he as such notary was personally acquainted with, but relied upon and was satisfied with the introduction of the said Hamm and the statement of the said parties themselves; that said Coffin used all proper efforts to secure the rights purported to have been sold and transferred by said assignment and papers, but failed in his efforts by reason of the facts that said Mayberry never signed and executed said assignment and affidavits as certified by said notary public; that said Bruton had never seen or known said parties, and that said Hamm was not acquainted with and had never known either of said parties, but this fact was not known to said Bruton. The court, sitting as a jury, found the facts as set forth in the agreed statement of facts, and declared the law both upon the demurrer and the facts to be for the defendant, and that the

plaintiff's complaint and cause of action be dismissed, and rendered judgment for the defendant for costs.

Plaintiff has appealed.

*Myers & Bratton,* for appellant.

If the acknowledging party is not personally known to the officer, his identity must be proved by witnesses known to the officer, which proof or affidavit must be indorsed on the deed or instrument of writing. Kirby's Digest, § 747. The law imposes the duty on a notary public to know or to inform himself that a party acknowledging an instrument before him is the person he represents himself to be, and he is liable on his bond for negligence in this respect. 10 Cal. 239; 9 Pac. 843; 63 S. W. 819; Shear. & Red. on Neg. (5 Ed.), § 602; 2 Mo. App. 413; 45 Ill. App. 311; 9 Pac. 843; 31 Pac. 1132; 39 Mich. 456; 97 Cal. 208; 61 Iowa, 35; 94 N. Y. 302; 15 How. 179; 74 Mich. 643. Where a notary, through negligence or fraud, makes a false certificate, he and his sureties on his bond are liable for resulting damages to an injured party. Authorities, *supra.* The injury would not have occurred but for the negligence of the notary. It was therefore the proximate cause. 48 Minn. 433; 59 S. W. 925, and cases cited; 36 S. W. 1111; 26 Hun, 608; 50 Am. Rep. 568; 14 Minn. 62; 8 Am. & Eng. Enc. Law 861.

The doctrine of estoppel applies, and Bruton should not be heard to offer any explanation in the face of his cetrificate, and plaintiff, on showing its falsity, should have judgment. 8 Ark. 345; 25 Mass. 386; 87 Ind. 126; 22 Ark. 308; 45 Ark. 59; 11 Am. & Eng. Enc. Law (2 Ed.), 421. The one whose negligence or lack of foresight makes the loss possible must bear the burden. 6 Mackey, 428; 74 Ala. 604.

*J. A. Gillette* and *Dan B. Granger,* for appellees.

1. The case of *Smith* v. *McGinnis,* 75 Ark. 472, controls this.

2. The certificate of a notary is presumed to be correct, and can not be attacked collaterally. 16 Am. & Eng. Enc. Law (1 Ed.), 753 and note 4; *Ib.* 767, and note 3; 40 Am. Rep. 193. The notary in determining the identity of the person making the assignment acted judicially, and can not be held liable unless in the dereliction complained of he acted willfully, maliciously or

corruptly, and this is not charged. 16 Am. & Eng. Enc. Law (1 Ed.), 754 and note 2; *Ib.* 782 and note 3; *Ib.* 783 and note 1; 1 Rice on Ev. 315; 97 Pa. St. 228; 38 Am. Req. 623; 39 Am. Rep. 805; 40 Am. Rep. 193; Rapalje & Lawrence's Law Dict. 689.

3. The statute relied on is not applicable. Additional homestead rights are personal property, subject to assignment and transfer as such. Until the right is exercised, title to land which might be entered is perfect in the Government, and not affected by any transfer of the right. 19 Ark. 86; 20 Ark. 359; 26 Ark. 168; 163 U. S. Sup. Ct. 331; 39 Land Dec. 510.

4. There is no privity between the plaintiff and the notary. The cause is too remote.

WOOD, J. The cause was tried by the court sitting as a jury, and was heard upon "the complaint, the answer of the defendants, and their demurrers reserved therein to the said complaint, together with an agreed statement of the facts." The court found the facts as set forth in the agreed statement, and declared the law generally both upon the demurrer and the facts to be for the defendants.

In *Smith* v. *Maginnis*, 75 Ark. 472, in considering whether "the fact that the notary public falsely certified that the parties had made affidavits to their ownership was the proximate cause of the injury," we said: "Though the plaintiff may have relied upon the affidavit and the certificate of the notary public in making his purchase, still such certificate was not in law the proximate cause of his injury. The proximate cause of his injury was the act of the party who sold him homestead rights which he did not own, not the negligence of the notary in certifying that such party had sworn that he was the owner of the right. *Oakland Savings Bank* v. *Murfey*, 68 Cal. 459; *Wyllis* v. *Haun*, 47 Iowa, 614; *Doran* v. *Butler*, 74 Mich. 643; *Hatton* v. *Holmes*, 97 Cal. 208; *Henderson* v. *Smith*, 26 W. Va. 829; 53 Am. Rep. 139." That case rules this. There is no such difference in the facts as will warrant the application of a different principle.

The whole case below was tried upon the theory that the notary and his bondsmen were liable to appellant because the notary falsely certified that one Mayberry personally appeared before him (the notary) to him known to be the person who executed the assignment and affidavit, and that certain other parties

had made affidavit before him which were in corroboration of the affidavit of Mayberry. In other words, that appellees were liable because the notary had certified falsely as to the identity of the parties named in his certificates. It was alleged in the complaint that the affidavits were in proof of and to establish the right of the said Mayberry to a soldier's additional homestead right, and also that "said assignment and affidavits, if true, would have established the right of the said Mayberry to a soldier's additional homestead right under the laws of the United States." It is set forth in the agreed statement that said assignment and affidavits purporting to have been executed before said Bruton, if true, would have established the right of said plaintiff as assignee to the soldier's additional right of the said Mayberry. And that said Coffin used all proper efforts to secure the rights purported to have been sold and transferred by said assignment and papers, but failed in his efforts by reason of the facts that said Mayberry, Jr., never signed and executed said assignment and affidavits as certified by said notary public. But all this falls short of alleging and proving that Mayberry had in fact a right of additional homestead entry. The utmost that these allegations and the agreed facts show is that Mayberry and his assignee could, if the facts so falsely certified to had been true, have established "a soldier's additional homestead claim." The very statement shows that the right had not in fact been established, but could be only upon condition that the affidavits were true. Well, unless Mayberry had additional homestead rights to transfer, it is certain that a false certificate of acknowledgment that he had executed an assignment of such right to another, and a false certificate that certain affidavits were made that would establish his right, if true, would not be the proximate cause of injury and the basis of liability. So the complaint is defective in not alleging that Mayberry had a right of additional entry which he could assign, and the demurrer should have been sustained.

Again, as to the facts, the trial court may have concluded that the agreed statement failed to show that Mayberry had a right of additional homestead entry. Giving to appellees the benefit of every deduction, the trial court may have drawn from the evidence in their favor, who can say that it was not warranted

in such a conclusion? There is no affirmative statement that Mayberry had a right to additional homestead entry, and taking the whole agreed statement together, the intention and effect of it was to show that appellant purchased for a valuable consideration from one Hamm the claim of Mayberry to have a soldier's right of additional homestead established, which had been assigned in blank, and appellant purchased this claim of Hamm upon the certificate of the notary that Mayberry had appeared before him and acknowledged the execution of the assignment of the claim, and made affidavit in proof of his right to have his claim approved or established, which affidavit, if true, would establish his right; and that certain other parties had made affidavits also in proof of Mayberry's right to have his homestead claim established, which, if true, would establish such right; and that such certificate of the notary that the persons appeared and made the acknowledgment and affidavits was in fact false, but that appellant believed it to be true, and acted upon the faith of it. This comes short of showing that Mayberry had a right of additional homestead already established, but only showed that he had assigned such right if it should be established or approved.

The question of whether or not the right of additional homestead could be established depended upon the truth of the facts set up in the affidavits. There is no statement in the complaint or the agreed statement that the facts set forth in the affidavits were in fact true. So the complaint and the proof failed to show a cause of action. We conclude that what we said in *Smith* v. *Maginnis, supra,* is applicable to the pleadings and facts of this record, and the judgment is therefore affirmed.