STATE ex rel. W. W. SCRUGGS, Appellant, v. M. E. PACKARD et al., Respondents.

Kansas City Court of Appeals, January 28, 1918.

1. **BONDS:** Notary Public: Negligence in Taking Acknowledgment: Liability: Damages. A notary's bond is purely one of indemnity, and where suit is brought thereon the relator is limited in the amount of the recovery to the actual loss sustained by the negligent act of the notary, the liability extending only to such damages as were proximately caused by such act.

2. ——: ——: ——: ——: ——. Relator lent his money on a note apparently secured by chattel mortgage on cattle, but which was worthless since there were no such cattle in existence nor did any individual of the mortgagor's name or description exist or own any such cattle. Relator took the note and chattel mortgage without investigation, relying upon the fact that similar notes had been paid. The notary negligently certified to the identity of the mortgagor, but the relator's loss arose from the fact that no cattle were in existence from which security could have been had if the notary's certificate had been true. The act of the notary did not have the effect of substituting another in the place of the one who has obtained the former loans since the evidence shows that the same man made relator's note. Consequently, the notary's certificate did not proximately cause the loss, and, therefore, relator could not recover more than nominal damages, but, because the notary's act was a violation of official duty which relator was entitled to have performed, relator is entitled to nominal damages.

Appeal from Jackson Circuit Court.—*Hon. Clarence A. Burney*, Judge.

AFFIRMED.

*McGilvray, Woodbury & Woodbury* and *H. H. Mc-Cluer* for appellant.

*Morrison, Nugent & Wylder* and *H. L. Hassler* for respondents.

TRIMBLE, J.—This is a suit on the defendant Packard's official bond as a notary public in and for Jackson county, Missouri. The charge is that through the notary's negligence in taking an acknowledgment to a chattel mortgage, the relator sustained a loss of $6250, which, he seeks to recover and for which he prays judgment. At the close of plaintiff's evidence the court, at defendant's request, instructed the jury to find for plaintiff but for nominal damages only and the jury returned a verdict assessing damages at one cent. Thereupon plaintiff appealed.

For many years before and up to the transaction involved in and forming the basis of this suit, the firm of McCoy & King had a good reputation and conducted at the stockyards in Kansas City an apparently successful business as a livestock commission firm, in the course of which they obtained for their patrons loans from various banks and individuals. These loans were secured by chattel mortgages on cattle located in the trade territory of Kansas City, and were obtained by the firm taking the secured paper payable to themselves and endorsing it over to the bank or individual making the loan. This method of procedure is common to livestock commission firms.

Relator was engaged at said stockyards in the livestock loan business, buying and lending on such notes secured by chattel mortgage on cattle. He had, up to a few months prior to the occurrences forming the basis of this suit, been associated in business with his

father, but the latter had retired and the son had taken over the business for himself. In April, 1915, he purchased of McCoy & King a note for $6250 purporting to be signed by one, C. J. Gregory, and purporting to be secured by a chattel mortgage on 172 head of cattle in Barber county, Kansas. The chattel mortgage had an acknowledgment attached thereto taken by the defendant Packard, wherein she certified that on April 1, 1915, "before me personally appeared C. J. Gregory known to me to be the person described in, and whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same as his free act and deed" etc.

The note not being paid at maturity, investigation was made and it was discovered that there was no such person as C. J. Gregory, nor was there any cattle of the kind or of any similar character on the location described, and no cattle in Barber county, Kansas, owned by anyone named C. J. Gregory.

When this discovery was made, it also came to light that McCoy & King, payees in the note and who had sold it to relator, had been engaged in a series of frauds through the use of spurious cattle paper. They were indicted, and, when called upon to testify in this suit, stood on their constitutional rights. It is not claimed, however, that the notary, Packard, in any way participated in or knew of the fraudulent acts of McCoy & King or that she was in any way guilty of fraud. The petition alleges, and it seems to be conceded on all sides, that a person pretending to be C. J. Gregory appeared before her, the said notary, with the note and chattel mortgage, and executed and acknowledged it and also swore to an affidavit of ownership of, and clear title to, the cattle. The notary was negligent in certifying in the acknowledgment that C. J. Gregory was known to her, and had appeared before her, since it seems that she did not know the man who acknowledged the mortgage, but accepted McCoy's introduction of him as C. J. Gregory.

The note in question was a renewal of a note given six months before, which was itself the renewal of a note given six months before that; all of them purporting to be secured by chattel mortgage on the same cattle. The first two notes, the original and the first renewal, had been obtained from McCoy & King for the National Bank of Providence, Rhode Island, by and through the loan company of relator's father with whom, as stated, relator was then associated. In this way, relator knew of said two notes and was well acquainted with the representations made by McCoy & King as to C. J. Gregory and with a written statement addressed to McCoy & King, dated February 12, 1913, purporting to be signed by C. J. Gregory and sworn to before said Packard as notary as to Gregory's financial condition, which McCoy & King had presented to and filed with said father's loan agency. When the Providence Bank's renewal note fell due, McCoy & King presented to relator the note and chattel mortgage, bearing the acknowledgment by Miss Packard as above stated, and relator took the loan himself by taking from McCoy & King an endorsement to him of said note and paying the bank the amount due it.

Of course, when McCoy & King's crookedness was discovered, it was also found that they were insolvent.

It appears from relator's own testimony that from the time McCoy & King got the loan on the first note, obtained by the Providence bank through the loan agency aforesaid, on down to the discovery of the fraud in connection with relator's note, no investigation was made by him or any one else to discover whether there were any cattle in existence as described in the chattel mortgages securing the various notes, or whether there was such an individual as C. J. Gregory in Barber county, Kansas. In taking the note and chattel mortgage as security for his loan, relator relied partly upon what McCoy & King told him in reference to Gregory, partly upon the written statement as to Gregory's financial condition which McCoy & King had filed with the loan agency to obtain the first loan, and partly, and,

as relator says, "quite strongly" upon the fact that other loans to Gregory had been paid. The payment of these other loans, however, is shown to have been made through McCoy & King on checks endorsed by them. So that all these matters upon which relator relied amounted to no more than representations made by McCoy & King which were accepted by relator as being true without any investigation as to Gregory's *title* to the cattle or as to their existence. Both McCoy & King talked to relator about C. J. Gregory; and King, in whom relator had great confidence, told him the Gregory paper was good.

Relator says that he knew the notary did not certify that the cattle were there; also that he knew that, under the laws of Kansas, an acknowledgment was not necessary to the admission of a chattel mortgage into the recorder's office, and that while on file it would have been valid to impart notice without any acknowledgment. And while he says he relied upon the notary's certificate as to the identity of C. J. Gregory, yet he explains this by stating that he compared the signatures on the former note and financial statement with that on the new note (which appeared to correspond), and relied upon the notary's certificate that "this was the same man signing it who had the other," meaning the other notes and papers. But he admits that, for all he knew, *the same man did sign them all,* and there is no evidence whatever to show that they were signed by a different man. On the contrary, they were all signed by the same man, and the notary's act in taking the acknowledgment to the mortgage relator afterwards got did not cause him to take any other or different security from that the other two notes had. They all had the same infirmity, namely, there were no cattle in existence to give them security and no man by the name of Gregory owning any such cattle or cattle of any kind.

Here, then, is a case where although the notary has negligently certified to the identity of the mortgagor yet that negligence is not the *proximate* cause of

relator's loss. The loss arises from the fact that no cattle were in existence from which security could have been had if the notary's certificate had been true, and because relator failed to make any investigation to ascertain the existence and ownership of such cattle. A bond to secure the faithful performance of a notary's duty "stands good as an idemnity against all the natural and proximate consequences of a breach of that duty." [State ex rel. v. Tittman, 134 Mo. 162, 171; State ex rel. v. Thompson, 81 Mo. App. 549, 556.] The notary's certificate can in no wise be deemed to certify to the ownership of, or title to, the property described in the instrument acknowledged, nor can anyone rely upon the certificate of acknowledgment as evidence of such title. [State ex rel. v. Thompson, supra.] "The bond of a notary is purely one of indemnity and if the relator recovers, the amount of the recovery is limited to the amount of the actual loss sustained by the act of the notary." [State ex rel. v. Hallen, 165 Mo. App. 422, 438.] And the liability extends only to such damages as were *proximately* caused by the negligent act of the notary. [State ex rel. v. Plass, 58 Mo. App. 148; 1 Corpus Juris., 904; State ex rel. v. Boughton, 58 Mo. App. 158; Oakland Bank v. Murfey, 68 Cal. 445.] In Caffin v. Braton, 78 Ark. 162, 167, it was held, in a case based on a negligent certificate of a notary to an assignment of homestead rights falsely purporting to have been executed by one Mayberry, that if the real Mayberry did not in fact have any homestead right to transfer, "a false certificate of acknowledgment that he had executed an assignment of such right to another . . . would not be the proximate cause of injury."

In State ex rel. v. Plass, supra, it was held that the relator in that case had a right to assume that the suppositious characters named in the certificate were real individuals; but that it could not be said that the loss was caused by the notary's act unless it was permissible to presume that "the pretended grantors existed because the notary so certified," and, then on that pre-

sumption found another presumption that "they owned the land because they existed." So in this case relator no doubt had a right to assume from the statement of the notary's certificate that Gregory existed, but relator had no right to assume that because he existed, the cattle were also in existence and Gregory had title thereto. Relator had no right to make, and *did not make,* these two last assumptions from the notary's certificate, but believed them by reason of his dealings with McCoy & King and the payment of former loans by the supposed Gregory. And the act of the notary did not have the effect of substituting another man in the place of the one who had obtained the former loans since the evidence tends to show that the same man who made the former notes also made relator's note, and there is no evidence tending to show the contrary. Consequently, the notary's certificate cannot be said to have proximately caused the loss even if relator did rely on said certificate to assure him that the signer of the note he got was the same man that had signed the others.

In the following cases cited by appellant, State ex rel. v. Ryland, 163 Mo. 280; State ex rel. v. Grundon, 90 Mo. App. 266; State ex rel. v. Meyer, 2 Mo. App. 413; and State ex rel. v. Balmer, 77 Mo. App. 463, the property was in fact owned by the one whom the notary negligently and untruly certified had acknowledged the instrument. So that, but for the untruthful certificate, there would have been no loss, and, therefore, the notary's act undoubtedly caused, and proximately caused, the loss; and the officer and his surety were held liable. We have been unable to find any case, where this question was under consideration, holding the notary liable for more than nominal damages for a *negligent* performance of duty, where the property was not in fact owned by the one falsely stated in the certificate to have acknowledged the instrument. In the case of State ex rel. v. Hallen, 165 Mo. App. 422, the wife, who, through the notary's negligence, falsely appeared in the certifi-

cate to have acknowledged the deed, *owned the property,* and it was conceded to be worth the amount of the recovery over and above the genuine incumbrance. The same fact as to the wife's ownership was in the case on the second appeal (196 S. W. 1067), so that, if there are any remarks therein seeming to be contrary to the view herein expressed, they are not to be regarded as within the decision announced. The case of State ex rel. v. Ogden, 187 Mo. App. 39, was one where the notary *fraudulently* certified to a false acknowledgment and by means of such fraudulent certificate obtained the relator's money. It has no application to a case like this.

We are of the opinion that the judgment should be affirmed. It is so ordered. All concur.