The Governor of Wisconsin ex rel. Mlekus, Respondent, vs. Maryland Casualty Company, Appellant.

*February 10—April 5, 1927.*

*Notaries: False certificate to counterfeit mortgage: Proximate cause of purchaser's damage: Measure of damages.*

1. A notary public and his sureties are liable for damages of which his false certificate is the proximate cause, under sub. (2), sec. 137.01, Stats., requiring a notarial bond, and sub. (8), providing that a notary shall be liable for the damages sustained because of his misconduct or neglect of duty. p. 474.

2. The measure of damages in case a notary public affixes a false certificate to a real-estate mortgage is the value of the mortgage as security; and this depends upon the value of the property or interest in the property mortgaged. p. 474.

3. In an action on the official bond of a notary public, brought on the ground that the notary, who was also a real-estate broker, negotiated a counterfeit real-estate mortgage, the purported makers and security both being non-existent, his false certificate of acknowledgment is *held* not to have been the proximate cause of the damages sustained by the purchaser. p. 478.

Vinje, C. J., and Crownhart and Stevens, JJ., dissent.

APPEAL from a judgment of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge. *Reversed.*

For the appellant there were briefs by *Walter F. Mayer* and *James E. Coleman,* both of Milwaukee, and oral argument by *Mr. Mayer.*

For the respondent the cause was submitted on the brief of *George A. Affeldt* of Milwaukee.

OWEN, J.   One Otto J. Habhegger was in the real-estate, loan, and insurance business in the city of Milwaukee. He was also a notary public.   One *Anna Mlekus,* the relator, was in the habit of investing money in real-estate mortgages. Habhegger was acting for her in the matter of placing loans on such security.   Sometime prior to June 4, 1921, he called at her home and represented that John Schmalser and wife desired to obtain a loan of $1,000 upon the security of a real-estate mortgage, and that, if she had the money, he would recommend the loan.   She agreed to make the loan. Sometime later he delivered to *Anna Mlekus* a mortgage purporting to have been executed by John Schmalser and wife and acknowledged before him, the said Otto Habhegger, as notary public.   The mortgage described property which had no existence.   John Schmalser and Annie Schmalser, his wife, were fictitious persons.   Habhegger fabricated the mortgage and it was spurious in every respect.   This action is brought by the relator against the defendant as surety on the notarial bond of said Otto Habhegger to recover the damages which she sustained by reason of the foregoing facts.

The case was commenced and tried in the civil court of Milwaukee county, where judgment was rendered in favor of the plaintiff for six cents.   Upon appeal to the circuit court for Milwaukee county judgment was rendered in favor of the plaintiff for the sum of $500, the full amount of the notarial bond.   Defendant appeals from that judgment.

Whether the relator, to whom we shall hereinafter refer as the plaintiff, paid the money to Habhegger upon the occasion of his first visit to her before the mortgage was tendered to her, or whether she paid it upon the delivery of the mortgage to her, is a disputed question of fact in the case which we deem immaterial in view of the conclusion which we have reached upon the question which will be discussed.

Our statutes require every notary public to execute and file a bond in the sum of $500. Sec. 137.01 (2). It is also provided that "if any notary public shall be guilty of any misconduct or neglect of duty in office he shall be liable to the party injured for all the damages thereby sustained." Sec. 137.01 (8). It is conceded that Habhegger's certificate of acknowledgment upon the mortgage in question constituted an act of official malfeasance in his office as notary public. It is well settled that under such circumstances an action will lie upon his official bond against him or his sureties, but the damages which may be recovered must be the proximate result of the false certificate. *People ex rel. Young v. Nederlander,* 177 Mich. 434, 143 N. W. 753, and cases there cited. It is conceded that the plaintiff lost $1,000 which she loaned upon the security of the mortgage tendered to her by Habhegger. She contends that her loss was the proximate result of the false certificate. The rule is well established, both upon reason and authority, that in such cases the measure of damages is the value of the mortgage as a security, and this depends upon the value of the property or interest in the property mortgaged. *McAllister v. Clement,* 75 Cal. 182, 16 Pac. 775; *Heidt v. Minor,* 89 Cal. 115, 26 Pac. 627; *Heidt v. Minor,* 113 Cal. 385, 45 Pac. 700; *Mahoney v. Dixon,* 31 Mont. 107, 77 Pac. 519; *State ex rel. Scruggs v. Packard,* 199 Mo. App. 53, 201 S. W. 953; *Coffin v. Bruton,* 78 Ark. 162, 95 S. W. 462. For instance, if the mortgage purported to secure an indebtedness of $10,000, and the value of the property pledged by it was

Governor ex rel. Mlekus v. Maryland Casualty Co. 192 Wis. 472.

only $5,000, it is apparent that the damage resulting from the false certificate could not be $10,000. It could not be more than the value of the land mortgaged. If the property mortgaged was valueless, then the mortgage was valueless, no matter whether the certificate was true or false, and the damage sustained by one taking such mortgage could not be the proximate result of the false certificate. This was the case in *McAllister v. Clement, supra,* where the court said: "It is clear that no action will lie to recover damages if no damages have been sustained."

In *Heidt v. Minor,* 89 Cal. 115, at p. 121 (26 Pac. 627), the court said:

"The official misconduct for which the defendants were liable to any one who was injured thereby consisted in his making and attaching to the counterfeit mortgages certificates of their due acknowledgments. And the plaintiff is not entitled to recover any more than her loss, by reason of said certificates being false instead of true. If the mortgages had been valid in every respect, their value as securities would have depended upon the value of the mortgaged property. If its value had been as great or greater than the sums secured by them, then the loss to the mortgagee might, in case of a false or fatally defective certificate of acknowledgment, be equal to the sums secured to be paid by said mortgages. Otherwise they might be of less value, or no value at all, as in the case of *McAllister v. Clement,* 75 Cal. 182, 16 Pac. 775, in which the finding was, that the property mortgaged was wholly valueless, and that plaintiff had not suffered any damage by reason of the defective certificate of acknowledgment."

In *Mahoney v. Dixon,* 31 Mont. 107, 77 Pac. 519, the court said:

"Instruction No. 8, above, is wrong. It submitted to the jury an entirely erroneous standard by which the jury might determine the measure of plaintiff's damages. By it the jury was told that the measure of such damages is the value of the property described in the spurious mortgage, not exceeding the amount of the notary's official bond. A simple

illustration will show the absurdity of this position. Assuming that the property was of the value of $4,500, and that there were prior mortgages or liens upon the property to the amount of $4,000, in that event the utmost extent of plaintiff's loss would be $500, for that would be the full value of the security which he would have had for his loan, had the mortgage been genuine."

Sutherland on Damages, vol. 2, § 488, states the rule to be that "the sureties of a notary public who fraudulently attaches to counterfeit mortgages certificates of their due acknowledgment are liable to one who loans money upon the faith of the instruments for the value they would have had if they were valid; such value to be determined with reference to the apparent worth of the property pretended to be mortgaged."

In this case there was no property mortgaged. The mortgage would have been of no value whatever no matter whether the certificate was false or genuine. Of course the plaintiff lost her money through the fraud of Habhegger, but we must carefully distinguish between Habhegger the individual and Habhegger the official. In his official capacity as notary public he did no more than to attach the false certificate of acknowledgment to the mortgage. The function of this certificate is to convey assurance that the mortgage is signed by those by whom it is purported to be signed. If the mortgage were executed by some person well known to Habhegger, and he had made a true certificate that it was acknowledged by the person by whom it was signed, and he had tendered that mortgage to the plaintiff, she would have suffered the same damage, because the property described therein did not exist, and her security would have been valueless. By the same token, if John Smith had brought this mortgage to the plaintiff, executed by John Schmalser and wife, and Habhegger had fraudulently certified to its execution by John Schmalser, such certificate would have been false and fraudulent, but it would have been no more

the proximate cause of plaintiff's damage than in the instance first cited.　As the notary does not certify either to the existence or to the value of the property described in the mortgage, damages resulting from the inadequacy of the security or the non-existence of the property described in the mortgage cannot be the result of the false certificate of the notary, whether that certificate be true or false.　If a true certificate would not have saved the plaintiff from her loss, how can it be argued that the false certificate was a proximate cause of her loss?

In *State ex rel. Scruggs v. Packard,* 199 Mo. App. 53, 201 S. W. 953, it appeared that the plaintiff loaned money on a note executed by one C. J. Gregory, secured by a purported chattel mortgage on 172 head of cattle in Barber county, Texas.　The notary public had certified to the acknowledgment of said mortgage by said C. J. Gregory. Investigation showed that there was no such person as C. J. Gregory, and there were no such cattle.　The certificate of acknowledgment was not fraudulent, but it was negligent. A man purporting to be C. J. Gregory actually appeared before the notary public, and in certifying that the man so appearing was C. J. Gregory the notary was negligent.　The only difference between that case and this is, that in this case the certificate of the notary public was fraudulent while there it was only negligent.　However, in that case it was assumed that the notary was liable for the damages proximately resulting from the false certificate.　So that so far as the principle is concerned it is identical with this case. It was held that the false certificate was not the proximate cause of the damage and that the notary was not liable.　To the same effect is *Coffin v. Bruton,* 78 Ark. 162, 95 S. W. 462.

The plaintiff relies upon *State ex rel. Matter v. Ogden,* 187 Mo. App. 39, 172 S. W. 1172, and it must be conceded that that case supports plaintiff's contention.　However, it

was not followed by the Missouri court in the later case of *State ex rel. Scruggs v. Packard,* 199 Mo. App. 53, 201 S. W. 953, and it was sought to be distinguished by saying that in the *Ogden Case* the notary fraudulently certified to a false acknowledgment. As already stated, we see no difference whether the false certificate be the result of fraud or negligence. It is the duty of a notary public to make truthful certificates. The damage resulting from a false certificate is the same whether it be prompted by fraud or is the result of negligence.

There is also language used in the opinion in *People v. Butler,* 74 Mich. 643, 42 N. W. 273, which supports plaintiff's contention. In that case the notary public forged the name of his brother-in-law to a mortgage, attached a certificate of acknowledgment, and induced the plaintiff to loan money on the mortgage. If the mortgage and certificate had been genuine the mortgage would have constituted ample security for the debt. In that case the plaintiff could have recovered from the sureties on the notarial bond under the rule which we adopt, and what was said with reference to fraud in the opinion was unnecessary to justify a recovery by plaintiff.

We consider the true rule to be first as above stated, and that under the facts of this case the false certificate of the notary did not constitute the proximate cause of the loss, and plaintiff cannot recover against the surety on the notarial bond.

*By the Court.*—Judgment reversed, and cause remanded with instructions to affirm the judgment of the civil court.

Vinje, C. J. (*dissenting*). Habhegger was a real-estate broker and a notary public. He sold *Anna Mlekus* a note and mortgage. The mortgage purported to be acknowledged before him, but the acknowledgment was forged and the property described in the mortgage did not exist. She testi-

fied: "I saw the seal and acknowledgment and his name. I depended upon the fact that he was a notary public. I looked at the papers because I wanted to know whether it was recorded or not. I know a mortgage must be recorded."

She had previously bought thirteen or fourteen mortgages and evidently knew the value of an acknowledgment. To me it seems plain from the undisputed facts that but for the forged acknowledgment she would not have purchased the mortgage. It is true she does not in terms so say— probably because she was not asked. But the presumption is that a person who knows the necessity for recording a mortgage and who looks at the acknowledgment and relies upon the fact that it is taken by a notary public would not purchase if it was not acknowledged and could not be recorded. The forgery of the acknowledgment was an essential link in the fraud perpetrated upon her and such forgery was done by him as a notary public and in violation of his duty as such. The forged acknowledgment being a necessary element to the accomplishment of the fraud, liability follows. That liability also follows from other elements of the fraud is quite immaterial. Several proximate causes may unite to produce a single result.

I am authorized to state that Mr. Justice CROWNHART and Mr. Justice STEVENS concur in this dissent.