STATE OF MISSOURI to the use of CHARLES D. MATHEWS, Appellant, v. GEORGE N. BOUGHTON *et al.*, Respondents.

St. Louis Court of Appeals, May 1, 1894.

1. **Notary Public**: RIGHT OF ACTION ON OFFICIAL BOND. When a notary public, who in his individual capacity acts as the agent of another person, is guilty both of official misconduct and of the embezzlement of funds as such agent, no cause of action on his official bond accrues in favor of his principal, if such embezzlement is the direct cause of the resulting loss, and if, moreover, his principal does not part with any value on the faith of his official misconduct.

2. ———: ———. In this cause the notary had in his charge money of his principal for the purpose of loaning out the same on real estate security. He received credit for loans in the account between himself and his principal on the delivery of the notes and deeds of trust therefor to the latter. After embezzling money thus in his charge, he delivered to his principal notes and deeds of trust which he had forged in the names of persons who had no existence, and to which he had as notary attached false certificates of acknowledgment. *Held*, that no recovery could be had by his principal in an action on his official bond.

*Appeal from the Stoddard Circuit Court.*—HON. JOHN G.
WEAR, Judge.

AFFIRMED.

*Wilson Cramer* for appellant.

*J. L. Fort* for respondent.

ROMBAUER, P. J.—This is an action on the bond
of a notary public against that officer and his sureties.
The sureties first demurred to the petition, on the
ground that it nowhere appeared thereby that the
relator had suffered *any damages* by the dereliction on
part of the officer of his official duties. Their demurrer
being overruled, the defendants answered by way of
general denial. The trial of the cause before a jury
resulted in a verdict for the defendants. The relator
on this appeal complains that the court erred in its
instructions.

It appeared by the pleadings and the relator's evi-
dence that the relator was a money lender residing in
Sikeston, Scott county; that the defendant, Boughton,
was an attorney at law and notary public residing in
Dexter, Stoddard county; and that the relator for a
number of years had employed Boughton as his agent
to loan out his money upon notes secured by deeds of
trust on lands in Stoddard county. The manner
adopted in effectuating such loans was that the relator
would place a certain sum of money into Boughton's
hands, and Boughton would loan the money out and
remit the notes and deeds of trust taken to the relator,
with whom he kept a running account.

In May, 1890, the relator began to suspect that
Boughton was guilty of some frauds in his transactions
with him. He called upon Boughton, who confessed

State to use v. Boughton.

that he had forged a number of the notes, and the signatures of the deeds of trust, and that the persons whose acknowledgment to these conveyances he pretended to have taken as a notary public had no existence. The plaintiff's own testimony on this subject is as follows: "He gave me a list of his forgeries, and said that many whose names appeared did not exist. On June 15 he gave me a revised list. He gave me these as his forgeries. On June 15, 1890, he gave me also a second memorandum showing moneys he claimed to have collected for me and had not turned over. He confessed to me that all these papers were forgeries. Boughton most always sent the notes and deeds of trust together; ,sometimes the notes would come first, and the deeds of trust would follow in a few days. They came about half and half in that way, one-half of the notes with the deeds of trust, and for the other half the deeds would follow later. When the notes came without the deeds of trust, I would simply check them, *and when the deeds of trust came, he would get his final credit.*"

It thus appears from the relator's own evidence that he never parted with any value on the faith of Boughton's official acts. Boughton as the relator's agent sent to him a number of forged notes, and forged and fraudulently acknowldged deeds of trust, and on the faith thereof obtained certain credits on his account with the relator. It is difficult to see on what theory any liability on Boughton's *official bond* is to be enforced under these circumstances. The damages which the relator has sustained are the result of his own gross negligence, and the criminal conduct of his agent. It stands conceded that the persons whose names were forged by the relator's agent had no existence, and hence could have neither credit nor land, and there is no pretense that other persons of the same name owned

the land described in the deeds or any land.   Rejecting
the question of agency altogether, yet the frauds of
Boughton as far as his *official acts* are concerned were,
as far as relator is concerned, mere *damnum absque
injuria.*

In *Heidt v. Minor*, 89 Cal. 115, a case almost iden-
tical in its facts with the case at bar, it was held that it
is no part of the official duty of a notary to receive
money from anybody, and that his sureties are not
liable for money fraudulently obtained and retained by
him. There, as in the case at bar, the money was
obtained upon forged mortgages.   It was also held in
that case that, where the official misconduct consists in
certifying falsely to the acknowledgment of mortgages,
the sureties are liable only for what would be the value
of the mortgages, if valid.   In *Hatton v. Holmes*, 97
Cal. 208, it was held that a person, whose own negli-
gence was the proximate cause of the loss, can not
recover from the sureties of a notary on account of the
latter's false certificate.   These cases are illustrative of
the well known principle that, although the loss results
remotely from the principal's negligence or criminal
conduct, his sureties will not be responsible to one
whose own negligence was the immediate cause of the
loss.

The appellant contends that the case of *People v.
Butler,* 42 N. W. Rep. 273, is opposed to this view.
This, however, is error. In that case the persons whose
names the notary forged to the deed as grantors, and
to whose acknowledgment he falsely certified, were
not only persons in existence, but were the actual
owners of the lands on the security of which the money
was loaned; hence the notary's fraud was the direct
result of the loss.   In the recent case of *State ex rel.
Alexander v. Plass*, 58 Mo. App. 155, and presenting
very analogous questions, we held that a notary and

his sureties are liable on the bond only for damages which were the direct result of his official misconduct.

As, under the admitted facts of the case, the damages are the result solely of the criminal conduct of plaintiff's own agent in embezzling the plaintiff's funds, the mere fact that such agent happened to- be a notary can not give the plaintiff a cause of action on the bond. The false certificates of acknowledgment are in fact wholly extraneous matter. This distinguishes the case from *State ex rel. Alexander v. Plass, supra,* wherein we held the plaintiff entitled to *nominal* damages. The judgment is affirmed. All concur.