THE STATE OF MISSOURI, AT THE RELATION AND TO USE OF EDGAR F. NELSON, EXECUTOR OF THE ESTATE OF CHRISTINA B. RIEGER, DECEASED, RESPONDENT, v. EVAN H. HAMMETT, AND STANDARD ACCIDENT INSURANCE CORPORATION OF MICHIGAN, A CORPORATION, APPELLANTS.—203 S. W. 2d 115.

Kansas City Court of Appeals.   Opinion Delivered June 2, 1947.

*Jay L. Oldham* and *Evan H. Hammett* for appellant.

*H. M. Langworthy, Clyde J. Linde* and *Robert B. Langworthy,* for appellant Standard Accident Insurance Company.

*Langworthy, Matz & Linde* of counsel.

*Sam B. Sebree, Lancie L. Watts* and *Chas. C. Shafer, Jr.,* for respondent.

BLAND, J.—This is an action on a notary's bond executed by the defendant, Hammett, as principal, and the defendant, Standard Accident Insurance Corporation of Michigan, as surety. There was a verdict and judgment in favor of relator in the sum of $5000, the penal sum of the bond, and damages were assessed in that amount. Defendants have appealed.

The facts show that relator is the executor of the will of Christina B. Rieger, who died, in Kansas City, on December 1st, 1943; that at all times mentioned herein Mrs. Rieger was a widow; that in the year 1941 she conveyed six houses located in Kansas City to the defendant, Hammett, her attorney, who took title thereto in the name of Frances B. McKee, for the benefit of said Hammett; that Hamett had been an attorney for Mrs. Rieger since the year 1935; that Mrs. Rieger left surviving her three children, including the executor, Edgar F. Nelson; that on August 1st, 1934 Mrs. Rieger made a will drawn by Mr. Heidelberger another attorney, in Kansas City; that this will was never revoked and was probated on January 13, 1944, when the executor herein was appointed; that Mrs. Rieger, at the time of the making of her will, owned the six pieces of property above mentioned; that she lived at the home of a Mrs. Larkin, in Kansas City, from the year 1938 to about November 1st, 1941; that she then moved to the home of her son, Edgar F. Nelson, in

Kansas City, where she remained until July 1st, 1942, when she went to live at the home of the defendant, Hammett, in Kansas City, where she lived with him until her death; that on August 19, 1941, prior to the time she made her home with Hammett, the latter wrote Mrs. Rieger offering her a home with him "without charge"; that at that time Hammett was living with his wife in Kansas City.

As before stated, Hammett began to represent Mrs. Rieger as her attorney in 1935. She was then approximately 74 years of age. From 1937 to 1941 Hammett obtained numerous loans from Mrs. Rieger. The making of these loans was discontinued in June 1941, the month in which the real estate transfers began. Mrs. Rieger was more than 80 years of age when she executed the warranty deeds to the real estate in question in 1941. Hammett notarized each of these deeds. One of the deeds was dated June 28, 1941 and recorded on November 27, 1941, two were dated July 9, 1941 and recorded on July 10, 1941, one November 7, 1941 and recorded on November 27, 1941, and two December 18, 1941, one of which was recorded on February 26, 1942 and one on July 17, 1942. The first three transfers were made while Mrs. Rieger was living at the home of Mrs. Larkin. The last three were made while she was living at her son's home. Shortly after these transfers were made Hammett, through Frances B. McKee, obtained loans upon five of the properties. Thereafter he obtained additional loans on some of them and, subsequently, all but one was sold. One was sold on January 3rd, 1943, one on January 9, 1943, one on May 1st, 1943, one on July 20, 1943 and one on December 3rd, 1943. One was transferred from Frances B. McKee to Hammett's mother on December 3rd, 1943. Two of the properties, including the one to Hammett's mother, were transferred between the time of the death of Mrs. Rieger and her burial.

The evidence on behalf of relator shows that Mrs. Rieger did not tell any of the members of the Larkin family about the sale of these properties, although the family was familiar with them and their rental. As before stated, three of the properties were conveyed to Mr. Hammett before Mrs. Rieger left the Larkin home. Relator's evidence further shows that Mrs. Rieger did not tell her son, Edgar F. Nelson, about any of these conveyances, although before she left his home she had transferred all of her real estate to Mr. Hammett; (apparently none of her sons knew of the transfers) that after the transfer of the properties the checks of the tenants for the monthly rental on some of them were made to Mrs. Rieger, the tenants not knowing of their transfer to Mr. Hammett; that the fire insurance was never transferred from Mrs. Rieger; that in order to procure its transfer it would have been necessary for her to have executed "assignments of interests".

The evidence on behalf of relator further shows that prior to Mrs. Rieger's moving into the home of Hammett her sons managed some of her business affairs for her and attended to the repairs and upkeep of the various properties; that the sons were on friendly terms with her up to the time of her death; that they did not learn of the conveyances by her of the properties until after her death, at which time Hammett told them that her property was all gone. The relator also offered evidence tending to show that Mr. Hammett was insolvent.

The defendant, Hammett, offered evidence tending to show that, at Mrs. Rieger's request, he entered into a contract with her whereby, in consideration of the conveyances to him by her of all of her property, he undertook to take care of her for the rest of her life and provide her a decent burial; that pursuant to this contract Mrs. Rieger moved into his home; that he and his wife took care of her adequately for the rest of her life; that her care was a continual expense and worry to himself and his wife; that upon her death he provided her with burial as he had agreed; that she had become estranged from her sons; that they were indifferent to her and her welfare; that she was always very uncommunicative as to her business affairs and never discussed them with her sons; that she was also a very independent and forceful woman, strong willed and could not easily be induced to carry out wishes contrary to her will; that she did not desire any of her sons to receive any of her property on her death; that there was no fraud or undue influence in the transactions; that the properties were conveyed to Frances B. McKee, a straw party, because he was having marital troubles and he wanted the properties held so that he could raise money if necessary from them in order to carry out his agreement with Mrs. Rieger, without having to obtain his wife's signature to conveyances.

In addition to introducing in evidence a letter dated August 19, 1941, in which Hammett offered Mrs. Rieger a home with him "without charge", plaintiff introduced a copy of the answer in another suit brought by Clarence L. and Edgar F. Nelson against Hammett, in which the latter alleged that one of the properties was conveyed to him by Mrs. Rieger as a gift and that she lived in his home "without charge".

The theory of recovery disclosed in the petition is that there was a confidential relationship existing between Mrs. Rieger and Hammett and that the latter procured the transfers to Frances B. McKee for his benefit through undue influence over Mrs. Rieger, and that the certificates of acknowledgment were false, in that, they recited that Mrs. Rieger acknowledged the instruments as her free act and deed; that they were not executed as her free act and deed and that Mrs. Rieger and her estate lost her properties when they were conveyed to innocent purchasers to secure loans and in their sale.

It is insisted by the defendants that the court erred in refusing to sustain their motions for a directed verdict at the close of all the evidence, for the reason that no submissible case was made against the defendant, Hammett, and it is the contention of the defendant, insurance company, (hereinafter referred to as the surety) that its liability as surety cannot exceed that of the principal (Hammett) in said bond. Defendants contend that there was no case made against them for the reason that there was a failure of proof that the conveyances were made to Frances B. McKee for the benefit of Hammett, through undue influence practised upon Mrs. Rieger by him.

In this connection defendants insist that plaintiff did not make out a prima facie case of undue influence by merely showing the relationship of attorney and client between Mrs. Rieger and Hammett and the conveyance of the property for his benefit, but that it was necessary to show other facts and circumstances; that a mere confidential relationship is not sufficient of itself to raise the presumption of undue influence, citing in support thereof Loehr v. Starke, 56 S. W. (2d) 772, 777.)

Clarence L. and Edgar F. Nelson brought suit against Hammett to set aside the deed to one of the properties in question on the ground of fraud and undue influence and to quiet title in plaintiffs. That case reached the Supreme Court. (See Nelson v. Hammett, 189 S. W. (2nd) 238.) In that case the court held that the showing of a fiduciary relationship, activity and receipt of the client's assets by the attorney for his own apparent advantage, raises an inference of undue influence. The case of Nelson v. Hammett, supra, is the last expression of the Supreme Court upon the subject and is authority that a prima facie case of undue influence was made by plaintiff in this case. If "other facts" were necessary to be proven in this case to make a prima facie case there was ample evidence of such facts, among others, the fact that Mrs. Rieger's sons were told nothing concerning the transfers; that others were not told of the transfers; that some of her tenants did not know of the transfer until long months after they were made; that the titles to the properties were taken in the name of a straw party; that rents were collected after the transfers by Mr. Hammett on some of the properties, for which he gave receipts signed "E. H. Hammett, Attorney for Owner"; that Mr. Hammett pleaded in the other suit that one of the properties was conveyed to him as a gift and, in this suit, that it was conveyed in consideration of a contract to support and bury Mrs. Rieger; that two of the properties were conveyed between the time of Mrs. Rieger's death and her burial; that some of the deeds were withheld from recording for a considerable period of time; that so far as the evidence shows Mrs. Rieger was not represented by any other attorney in the matter; that there was no written contract

between the parties; that the transfers were not made. the same day but covered a period of six months; that Mr. Hammett acknowledged the deeds as notary (It is improper for a notary to notarize an instrument in which he has a beneficial interest; 1 C. J. p. 802; Hainey v. Alberry, 73 Mo. 427; Stevens v. Hampton, et al., 46 Mo. 401) that the conveyances covered all of the real property of Mrs. Rieger and, in fact, apparently all of her property, despite the fact that she had three sons, (plaintiff's evidence tends to show that her relationship with them was friendly) and that there was an unrevoked will in existence leaving her property to them.

It is insisted by the surety that the court erred in refusing to sustain its motion for a directed verdict because the petition fails to state a cause of action, in that, a notary's bond does not cover claims by the grantor in a deed acknowledged by a notary, or any person claiming under the grantor; but can be sued upon only by some third person who takes the deed and who has relied upon the notary's statements contained in the certificates of acknowledgment; that there is no pleading or evidence that Mrs. Rieger, or any one claiming under her, relied upon the certificates reciting that Mrs. Rieger signed the instruments as her free act and deed; that the motion should have been sustained because there was no evidence that the acknowledgments were the proximate cause of the loss claimed to have been sustained by deceased or relator; that there is no evidence that the recitation in the acknowledgments did not state the truth. .

It is true that in practically all of the cases found in the reports, having to do with suits on notary bonds involving false or negligently made certificates of acknowledgment, it was necessary to show reliance of the relator on the notary's statements contained in the certificate.

However, relator has been able to find one case where a grantor in a deed was permitted to recover. (Aetna Cas. & Sur. Co. v. Commonwealth, 25 S. W. (2nd) (Ky.) 51.) Our statute, section 13364 R. S. Mo. 1939, provides that a notary bond "may be sued on by any person injured". (See, also, State ex rel. v. Meyer, 2 Mo. App. 413.) In State ex rel. Sappington v. Am. Surety Co. of N. Y., 41 S. W. (2nd) 966, the notary falsely certified that the plaintiff, husband in a divorce suit, had subscribed and sworn to the petition. Plaintiff obtained the divorce from the defendant by default. In a suit on the bond by the wife it was alleged in the petition that by reason of the false certificate of the notary she had been deprived of the support of her husband for the space of one year, and that she had suffered other damages. The court held that the affidavit in the divorce case was jurisdictional, and that the act of the notary was the proximate cause of defendant's injury. Of course, in that case there was no reliance upon the certificate by the plaintiff, yet, she was permitted to recover because she was damaged by the act

of the notary. The case of Aetna Cas. & Sur. Co. v. Commonwealth, supra, is similar, in many of its facts, to the case at bar. In that case the grantor in a deed was permitted to recover on the notary's bond because of a false certificate of acknowledgment, resulting in the property being conveyed to an innocent purchaser to the loss of the grantor. We think there is no merit in the contention that there must be a showing of reliance of the relator, in every instance, upon the false certificate, in order to make out a case against the surety on the bond.

The question as to whether the certificates involved in this case were the proximate cause of the loss sued for is a more serious one. The surety undertook no responsibility for the acts of Hammett as an individual. The surety's liability is strictly limited to the losses occasioned by its principal's acts of official misconduct. The undue influence practised by Hammett upon Mrs. Rieger was, of itself, an individual matter of his and the surety is not liable therefor unless it was connected in some way with the acknowledgments so as to result in the acknowledgments contributing, at least, as one of the proximate causes of the loss of the properties to Mrs. Rieger and her estate. (St. of Mo. ex rel. Mathews v. Boughton, 58 Mo. App. 155; State ex rel. Zuber v. Hunter, 46 S. W. (2nd) 216; State ex rel. Wilkinson v. Central Surety & Ins. Corp., 112 S. W. (2nd) 607.)

The surety insists that the acknowledgments did not contribute as a proximate cause of the loss for the reason that a deed will operate to transfer good title to real estate, as between the parties, without any acknowledgment or recordation, citing in support thereof, Elsea, et al., v. Smith, et al., 273 Mo. 396.

If Hammett's activities with reference to the transfers of the properties had ceased when he obtained the deeds for his benefit there might be some merit in the contention that the acknowledgments did not contribute as one of the proximate causes of the loss; but the evidence shows that Hammett, through Frances B. McKee, borrowed money upon the properties conveyed by Mrs. Rieger and that he finally sold them presumably to innocent persons. Thus Mrs. Rieger and her estate lost her property by the act of Hammett and if the acknowledgments were but a link in the chain of such acts depriving Mrs. Rieger and her estate of her property, it may be inferred, without such a link, the property would not have been lost.

While these facts by themselves establish that the loss was caused, at least in part, by the acknowledgments, it does not follow that the acknowledgments were the proximate cause or one of the proximate causes of the loss. In order to have become one of the causes the acts causing the loss must have followed each other in natural, continuous and unbroken sequence. (St. ex rel. Sappington v. Am. Surety Co. of N. Y., supra., 50 C. J. pp. 823, 838.) One may

obtain a conveyance of property, whether through fair or foul means, with no intention of mortgaging or selling it. He might intend to keep it for income purposes. (In this case the houses were rental properties.) At some subsequent date he might find it necessary or desirable to borrow money on the property for some purpose, or conclude that the time was propitious for its sale. If such were the facts in a given case the acquisition of the property and its encumbrance or sale would be separate occurrences or transactions. At least they would not be so connected that they, together with the acknowledgment to the conveyance, would occur in a continuous and unbroken sequence. If Hammett, when he obtained the deeds from Mrs. Rieger, had no other purpose than to have the real estate conveyed for his benefit and he did not, until some future date, decide to encumber or sell the properties, we think the sequence of acts would be broken. In other words there would not be a continuous and unbroken sequence of events leading up to the time when Mrs. Rieger or her estate lost the opportunity to recover the property. On this point see Commonwealth ex rel. Ulshofer v. Turner, et al., 17 Atl. (Pa.) 352,356. However, if there is evidence from which the jury could infer (and we think there is) that it was the intention of Hammett from the beginning of these transfers to convey the properties away or encumber them in order to defeat Mrs. Rieger, or persons claiming under her, from recovering them in his hands, (there was no chance of recovering damages from him as he was insolvent) thus making it possible for him to realize financial benefits that might accrue by reason of the conveyances, to the loss of Mrs. Rieger or her heirs, then the chain of events was not broken (at least as a matter of law) and the acknowledgments were but a link in the chain and the jury could conclude that the false acknowledgments contributed as one, at least, of the proximate causes of the loss. (See case last cited.) But such a theory is not pleaded in the petition. The petition merely pleads the facts of the procuring of the deeds by undue influence on the part of Hammett, the false acknowledgments, in that, they recited that Mrs. Rieger acknowledged the deeds as her free act and deed; that the acknowledgments to said deeds were not her free act and deed but were procured through undue influence by Mr. Hammett. It is true, the petition pleads the encumbering and sale of the properties, but instead of pleading that it was the purpose of Mr. Hammett from the beginning to bring about a sequence of events, including the sale or encumbering of the properties to innocent purchasers, it merely pleads that after the properties were conveyed Hammett executed the false certificates and that thereafter they were conveyed to others. There was, therefore, no pleading of facts showing that the false certificates were the proximate cause of the loss, or contributed as such thereto, at least, insofar as the surety is concerned.

It is insisted that if there was any undue influence it was consummated before the acknowledgments were added to the deeds; that the statement in the certificates that the grantor executed the instruments as "her free act and deed" was entirely superfluous and unnecessary, and constituted no material part of the acknowledgment, for the reason that a deed may be validly recorded without such a statement in the acknowledgment. Gross v. Watts, et al., 206 Mo. 373, is cited in support of this contention. The case cited holds that a valid certificate of acknowledgment need not recite that the instrument was acknowledged as the free act and deed of the maker thereof. But it by no means follows that the certificate is a proper one if the execution of the instrument is not the free act and deed of the maker thereof to the knowledge of the notary and, we are of the opinion that, a certificate made where the notary knows that the instrument is not the free act and deed of the maker, is false and its making is a violation of his official duty. We think it is a clear breach of a notary's official duties to so certify under such circumstances. Even though Mrs. Rieger did appear before Hammett as a notary and acknowledged that she executed the various deeds as her free act and deed, this would not make the conduct of the notary any less reprehensible if he knew, as a fact, that it was not her free act and deed, and it would clearly be a violation of his official duties to certify that she executed the deeds when he knew that the executions were faulty. Walker v. Shepard et al., 71 N. E. (Ill.) 422, 425. In Spiro v. Am. Bonding Co., 8 Orleans App. (La.) 182 and Flanagan v. Spitzfaden, 7 Orleans App. (La.) 230, it was held that an official signature to an instrument by a notary which he knows to be forged, gives rise to a cause of action against his surety by any one injured by his act, (See 46 C. J. p. 527 n. 5.)

It is insisted that relator cannot maintain this action because the statute, section 13364, provides that the bond may be sued upon only "by any person injured", and that such a person does not include the personal representative of such person; that the cause of action ceased upon the death of Mrs. Rieger. There is no merit in this contention. It has been held that a cause of action of this kind is assignable. (St. ex rel. Park Nat'l Bank v. Globe Indem. Co., 61 S. W. (2nd) 733,736.) One of the tests of assignability is whether the cause of action passes to the personal representative of the decedent. (See case last cited and St. ex rel. Park Nat'l Bank v. Globe Indem. Co., 29 S. W. (2nd) 743.)

It is contended that the court erred in refusing to permit defendants to show that the appointment of the relator as executor was void as a result of fraud. In this connection defendants offered to prove that the recitation in the application for letters testamentary, filed by the executor, reciting that the will of the deceased could not be produced for the reason that it was delivered by Mr.

Heidelberger (now deceased) to Hammett, was false, and that the probate court should not have admitted the will to probate without citing Hammett. In this connection section 569 R. S. Mo. 1939 is cited. This section provides: "If any probate court shall be satisfactorily informed that any person has in his possession the will of any testator, and refuses to produce the same for probate, such court shall have the power to summon such person, and to compel him, by attachment, to produce the same".

Thus defendants seek to attack the appointment of the executor collaterally. Defendants insist that they are entitled to make this collateral attack for the reason that they are strangers to the record in that case, and that a stranger may attack an order or judgment if he is prejudiced by it in respect to some pre-existing right, which defendants claim they have in this matter. It is well settled, and there is no contention to the contrary, that a collateral attack may not be made upon a judgment of a court of competent jurisdiction by parties to the action in which the judgment is rendered, and persons in privity with them. (31 Am. Jur. pp. 179, 180.)

The proceedings in the probate court wherein relator was appointed executor were *in rem* and the order or judgment of the probate court appointing the executor is conclusive as against the world. (St. ex rel. Gott v. Fid. & Dep. Co., 317 Mo. 1078; St. ex rel. Callahan v. Hess, 153 S. W. (2nd) 713; Meriwether v. Block, 31 Mo. App. 170, 177; 1. C. J. S. p. 1149.) In view of this, the position of the defendants is no better than that of a party to the action, and they are not entitled to collaterally attack the order appointing relator as executor, for the reasons given.

It is insisted that the court erred in giving relator's instruction No. 2. This instruction told the jury that, if they found that, for several years prior to the time of the execution of the deeds in question the defendant, Hammett, was the attorney and confidential adviser of Mrs. Rieger, then a fiduciary relationship existed between them "and if you further find that Mrs. Rieger was at the time of the execution of said deeds a woman of approximately 80 years of age; and that she deeded her real estate mentioned in instruction No. 1, which constituted substantially all of her property, to Frances B. McKee for said defendant's Hammett benefit, if you so find; and that said defendant actively participated in procuring the execution of said deeds, if you so find; and that defendant Hammett had the opportunity to exercise undue influence over Mrs. Rieger in the execution of said deeds, if you so find; and that Edgar F. Nelson was not advised of the execution of said deeds, if you so find; and that after the execution of said deeds, tenants in some of said property so conveyed continued to pay rent to Mrs. Rieger, if you so find; and that the fire insurance on some of said real estate was not assigned after

said deeds were executed, if you so find; and that her relations with her sons were friendly at said time, if you so find; and that she left a will in her sons' favor, if you so find; then the law presumes that said deeds were the product of undue influence of said defendant Hammett over Mrs. Rieger, and that said deeds were not the free act and deed of Mrs. Rieger, and it devolves upon the defendants to overcome such presumption of undue influence by the preponderance of all the credible evidence in the case, and unless the defendants have sustained such burden, you should find that said deeds were not executed by Mrs. Rieger as her free act and deed''.

It is contended that this instruction is erroneous in that it submits a presumption to the jury. A great deal is said in the brief in regard to the nature of the presumption arising by reason of the confidential relationship shown in this case. There are various classifications of presumptions. Some of them are pure presumptions of law which are not based upon inferences of fact but amount to mere statements of law which have been found convenient and sometimes necessary for use in the trial of cases. These are mere procedural presumptions which take flight upon the appearance of evidence on the subject. Of course these presumptions should not be submitted to the jury. (St. ex rel. v. Shain, 162 S. W. (2nd) 255, 263; McKenna v. Lynch, 233 S. W. 175.) There are other presumptions, sometimes referred to as presumptions of fact which are founded upon inferences drawn from proven facts. These inferences may or may not be drawn by the trier of the fact as it may see fit. Such presumptions should not be submitted to the jury in such a way as to compel them to draw the inference or inferences although they remain in the case throughout. The presumption involved in this case seems to be the latter kind, for in Nelson v. Hammett, supra, l. c. 243, the court said. ''*The facts giving rise to the presumption* of undue influence, that is, the admitted fiduciary relationship, activity and receipt of the client's assets, and all inferences arising therefrom, would not disappear upon the admission of rebuttal evidence, but would remain in the case to make an issue of fact and be weighed with the whole evidence in determining the issue of undue influence''. As to these presumptions it is also said: ''This means that although the presumption may be overcome and take flight, yet the evidence which gave rise to it remains in the case for the consideration of the court on demurrer. If there is no evidence for plaintiff except the bare minimum required to support the presumption, then if the presumption is destroyed, that underlying evidence alone will not be enough to raise an *inference* to the same effect and make a prima facie case for the jury. Bond v. S. L.-S. F. Ry. C., 315 Mo. 987, loc. cit. 1001, 1002, 228 S. W. 777, loc. cit. 782. But if there be *other* evidence, it may aid that required to raise the presumption, and the whole considered together

sometimes may be sufficient to support the necessary valid inference, even though the *presumption* has been overcome by defendant's evidence''. (State ex rel. Waters v. Hostetter, 126 S. W. (2d) 1164, 1166.) So it would seem that there are presumptions that partake of both of the kinds that we have discussed. In any event such presumptions are not for the consideration of the jury. (Dove v. A. T. 'S. Fe. Ry. Co., 163 S. W. (2nd) 548, 550, 551; State ex rel. v. Ellison, 187 S. W. 23, 26; Ross v. Pendergast, 182 S. W. (2nd) 307, 309; Linderman v. Carmin, 255 Mo. 63, 74; McCloskey v. Koplar, 46 S. W. (2nd) 557; Harke v. Haase, 75 S. W. (2nd) 1001.)

Instruction No. 2, in effect tells the jury that if they find the facts therein submitted they should conclude that there was undue influence, unless defendants showed there was, in fact, none. From what we have said the jury were not compelled to find that there was undue influence in the absence of proof by the defendants to the contrary, but it was within their province to so find. Not only that, it is well settled that the burden of proof never shifts from the person having the affirmative of an issue. The language of the instruction is such as to leave the impression in the jury's minds that the burden of proof shifted to the defendants in this case upon the appearance of the facts submitted in the instruction. (McCloskey v. Koplar, supra, l. c. 561.) The instruction was clearly erroneous.

However, relator contends that the facts submitted in the instruction give rise to a conclusive presumption of undue influence. This is a theory entirely different from the one relator pursued at the trial. If the facts submitted in the instruction give rise to a conclusive presumption of undue influence, (which we think is not true) then the instruction was misleading and confusing to the jury, in that, it submitted that the presumption could be overcome by the defendants. In support of his contention that the instruction is proper relator cites, among other cases, Mawry v. Norman, 223 Mo. 463, wherein the giving of a similar instruction was held to be not reversible error. However, the holding in that case is at variance with subsequent holdings of the Supreme Court. A long line of similar cases was disapproved by the Supreme Court in McCloskey v. Koplar, supra.

It is insisted that there is no evidence that the defendant, Hammett, actually participated in the procuring of the execution of the deeds as submitted in the instruction, but there are ample inferences to be drawn from the evidence that he did. It is insisted that the instruction does not have the jury find that the conduct of the defendant, Hammett, as submitted therein, was the proximate cause of the loss, but this instruction does not direct a verdict. Relator's instruction No. 1 covers the entire case and directs a verdict. It submits the question of proximate cause.

There are other attacks made upon the instruction some of which are based upon matters that have been disposed of adversely to defendants in connection with our discussion of the point that the motions for a directed verdict should have been given.

Complaint is made of the giving of relator's instruction No. 1. In this connection defendants likewise urge, among others, matters that have already been disposed of adversely to them in connection with the discussion of the question as to propriety of the court in overruling the motions for a directed verdict.

It is insisted that the instruction does not have the jury find that some official act of the notary was the proximate cause of the loss. The instruction does not submit a predetermined course of misconduct on Hammett's part to bring about a condition whereby he was to benefit by the final loss of the properties to Mrs. Rieger by getting the properties out of his hands and into those of innocent purchasers or mortgagees and, at another trial, it will be necessary for the instruction and the petition to be redrawn in order that the issues of proximate cause may be properly submitted to the jury.

It is insisted by the defendant, insurance company, that the court erred in admitting hearsay evidence as against it. This evidence consists of admissions made by defendant, Hammett. One of these admissions was made to the relator immediately following the death of Mrs. Rieger, in which Hammett told him that Mrs. Rieger had given him certain notes and all of her real estate. Another of the admissions was contained in the answer in the other case referred to above, in which Hammett stated that one of the properties was conveyed to him as a gift. It is claimed that these admissions by Hammett were not a part of the *res gestae,* and not admissible in evidence as to the surety. It is not contended that these admissions were not admissible as to the defendant, Hammett, and there is no question but that they were. (St. ex rel. v. Bird, 22 Mo. 470, 474; Bright v. Alascosa County, 274 S. W. (Tex.) 878, 881.) There are authorities holding that where the admissions of a principal are admissible as against him they are admissible as against the surety where the suit is against the principal and the surety on a joint obligation, but that is not the rule in this state. In order for the admission of a principal to be admissible as against the surety it must have been made in the performance of the business by which the surety is bound. Admissions made after the breach are not admissible as against the surety. (St. Charles Savs. Bk. v. Denker, 205 S. W. 208; City of St. Louis v. Foster, 24 Mo. 141; Blair v. Perpetual Ins. Co., 10 Mo. 559; The Cheltenham Fire Brick Co. v. Cook, 44 Mo. 29, 37; State ex rel. v. Bird, supra; 50 A. J. p. 1033.)

While the admissions of the defendant, Hammett, in question were not competent evidence as against the surety they were com-

petent as against Hammett and they could not properly have been excluded upon objection by the surety. Under the present practise in this state, if the surety desired the evidence to be withdrawn from the attention of the jury, so far as it affected the surety, it should have offered a withdrawal instruction. (Lanham v. Vesper Buick Auto C., 21 S. W. (2nd) 890; Chiles v. Met. Life Ins. Co., 91 S. W. (2nd) 164; Yant v. Charles, 219 S. W. 572.) We find no error on the part of the court in reference to these matters.

It is insisted that the court erred in permitting the introduction in evidence of a power of attorney executed by Mrs. Rieger in 1934, in which she empowered Edgar F. Nelson, her son, to manage and care for her properties. The power of attorney recites that she was incapable of taking care of her property. This was approximately 7 years prior to the time of the conveyances of the property in question, and we are unable to see how such a document could have any bearing upon the issues.

At another trial there will be no occasion for the admission in evidence of the application for letters testamentary. The judgment rendered against Hammett in still another case was introduced in evidence and defendants insist that the recitals contained in the judgment are immaterial. There is no question but that these recitals were prejudicial, but there was no objection made thereto until after they were read to the jury, and the court instructed the jury to disregard them. We find no error in connection with this point.

Because the relator introduced in evidence the answer in the other case wherein Hammett alleged that one of the properties was conveyed to Frances B. McKee as a gift to him, the surety sought to have Hammett testify as to the agreement which he had with Mrs. Rieger in regard to caring for, supporting her, and paying for her burial. The court sustained an objection to the offer and this is assigned as error. It is not contended that Hammett was a competent witness as to these matters but his competency was waived by the introduction in evidence of his admissions in the other case. Wade v. Hardy, 75 Mo. 394 and Mason v. Mason, 231 S. W. 971, are cited in support of this contention. As we read these cases they go no further than to hold that when the admissions of a party to a transaction, who is not a competent witness on the matter because of the death of the other party to the transaction, are introduced in evidence, he may deny the admissions. We feel that as far as Hammett could go in this case would be to deny or explain the admissions made in the former case. The offer of proof was not so confined.

The judgment is reversed and the cause remanded. All concur.