STATE of Missouri ex rel. and to the Use of Raymond F. KOSTE (Respondent), Appellant,

v.

MARYLAND CASUALTY COMPANY OF BALTIMORE, a Corporation (Appellant), Respondent.

Nos. 30462, 30463.

St. Louis Court of Appeals.

Missouri.

May 17, 1960.

Motion for Rehearing or for Transfer to Supreme Court Denied June 13, 1960.

Robert P. Stanislaw, St. Louis, for appellant.

David G. Dempsey, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for respondent.

ANDERSON, Judge.

This is an action brought in the name of the State of Missouri for the benefit of Raymond F. Koste against Maryland Casualty Company, surety on the notary public's bond of Theodore F. Lesch, for damages allegedly caused by the fraud of said Lesch. Suit was originally filed in the Magistrate Court of the City of St. Louis. In his petition relator sought actual damages in the amount of $1,792 together with the statutory penalty and attorney's fee for vexatious refusal to pay said claim. Judgment was entered in the Magistrate Court for actual damages in the sum of $1,642.50. On appeal to the Circuit Court a jury was waived and a trial there resulted in a finding and judgment against defendant in the sum of $1,542.50 actual damages. Plaintiff's claim for damages for vexatious refusal to pay, plus an attorney's fee was denied. From the judgment both relator and defendant have appealed.

Relator's petition alleged that the action was brought and prosecuted by the State of Missouri at the relation and to the use of relator, Raymond F. Koste. It further alleged that defendant executed its bond to the State of Missouri as surety for the faithful performance by one Theodore Lesch of his duties as a notary public. It was alleged that said Lesch had breached the conditions of said bond by wrongfully and fraudulently affixing his jurat on an application for a transfer of the title certificate of one 1956 DeSoto automobile from S & L Motor Company, Inc., to relator; that he did thereby certify that Dorothy Meyer, biller for S & L Motor Company, Inc., appeared before him and certified that S & L Motor Company, Inc., was the legal owner of said automobile; that the said Lesch well knew that S & L Motor Company, Inc., did not own said automobile and had no right or power to sell or convey said automobile for the benefit of the owner thereof; that relator, relying on the representations of Lesch and the apparent genuineness of said affidavit certified to by Lesch as notary public, transferred to Lesch his 1951 DeSoto automobile together with two checks drawn on his bank account in the total sum of $1,542 as payment in full

for said 1956 DeSoto; that relator was thereafter deprived of the possession of said 1956 DeSoto automobile under compulsion of a judgment in replevin brought by the true owner of said car, and by reason of said wrongful and fraudulent acts of said Lesch, relator was damaged in the sum of $1,792.

There was a prayer for judgment for the full penalty of the bond with execution in the sum of $1,792 plus $179.20 for vexatious refusal to pay and an attorney's fee together with interest and costs.

On Sunday, February 23, 1958, Koste agreed to buy from Lesch (who was both a used car dealer and notary) a 1956 DeSoto automobile. The sale took place at the used car lot where Lesch carried on his business under the trade names "S & L Motor Company" and "Auto Sales & Listing." Lesch represented to Koste that his company owned the car, stating that he had taken it in on a trade. In fact, Lesch did not own the car. It was owned by one Irvin Frank and had been delivered to Lesch to be displayed for sale, but with the understanding that any transaction with reference to the sale of the car would be handled by Frank. The certificate of ownership of said car was never assigned or delivered to Lesch. In fact, said certificate was, at the time, in the possession of a bank where it had been pledged to secure a loan. Pursuant to the agreement reached that day between Koste and Lesch, Koste gave Lesch a check for $1,500 and a 1951 DeSoto as payment for the 1956 DeSoto. The check was signed by Koste's wife and was drawn on a joint account which the Kostes had at the Hampton Bank. It was postdated to February 25, 1958, and was payable to Auto Sales & Listing. The reason for postdating the check was that the Kostes did not, at that time, have, in their joint checking account, a sum sufficient to pay it. To make the account adequate to meet payment of the check, relator contemplated transferring funds to it from a savings account maintained at the same bank. This was later done and the check was paid

when presented to the bank. On the same day, February 23, Lesch gave Koste an invoice evidencing the sale, and Koste signed a blank application for transfer of title on a form issued by the Secretary of State, at the same time telling Lesch that he, Koste, wanted to file the application himself. Koste relied upon Lesch's word that he would properly complete the blanks in the application form he had signed. The certificate of ownership to the car was not delivered to Koste. The latter told Lesch he would pick up the completed application the next evening. Lesch said he would have the certificate of ownership to the 1956 DeSoto the next day, and Koste agreed to produce the title to his DeSoto at the same time. Koste turned over to Lesch his 1951 DeSoto and Lesch gave Koste possession of the 1956 DeSoto, which he drove off the lot. Koste knew the importance of an assignment of a title certificate under Missouri law, and knew that a used car could not be sold without an assignment of the title. He also knew that there is a place on the reverse side of a title certificate for a dealer's assignment, and that it was not necessary for a dealer to get a new title. He knew that the original title could be reassigned.

The following day, February 24, Koste stopped by Lesch's place of business on his way home from work. He intended to deliver to Lesch the certificate of ownership to the '51 DeSoto, pick up the application he had previously signed in blank and to secure the title certificate to the '56 DeSoto. At that time Lesch told Koste that by mistake his employee had already applied for the transfer of title to the '56 DeSoto, and that Koste would not have to pay him for it if he did not want to. Lesch showed Koste what purported to be a receipt for the application. This was a pink copy of the application form which Koste had signed in blank the day previous. Koste inspected this copy which was completed and which bore a notary's jurat. The notary's jurat was that of Lesch, but Koste did not at the time know who had notarized

it. Koste testified that the receipt looked official, and he thought it was valid. On this receipt the owner of the car was shown as S & L Motor Co., Inc. It was signed "Dorothy Meyer, Biller." The jurat on the same was as follows: "Subscribed and sworn to before me this 24 day of February 1958, Theodore F. Lesch, Notary Public. My commission expires 7/16/60." After inspecting this copy of the application, Koste assigned to Lesch the title to his 1951 DeSoto, and promised to reimburse Lesch for the sales tax and application fee which Lesch claimed he had paid and which he claimed amounted to $42.50. Lesch told Koste he would receive the certificate of title through the mail from Jefferson City.

There was testimony that the regular procedure involved in the transfer of title to a used car is for the new owner, or the dealer for the owner, to submit to the proper authority, an application together with the assigned title. The application is then checked and if everything is found in order, validating marks are stamped on the application, and a copy of the application, referred to as a pink sheet, is returned to the applicant as his receipt. The pink sheet in the case at bar contained markings at the place where validating marks usually appear on applications. However, there was testimony from Cleo Amad, clerk and cashier at the local Revenue License Office, that said marks were not, in fact, authentic validating marks. She gave it as her opinion, after examining the exhibit, that there had been no application made for the transfer of title to the '56 DeSoto. In fact, it is clear from the whole record that Lesch never at any time made application for a transfer of title to the car in question.

On Tuesday evening, February 25, Koste again went to Lesch's place of business and gave him a check for $42.50. Lesch never delivered to Koste the certificate of ownership to the 1956 DeSoto. Later, Irvin Frank, owner of the 1956 DeSoto, brought a replevin suit against Koste for possession of said car. The suit resulted in a judgment in favor of Frank. Frank, who had obtained possession of the 1951 DeSoto, returned same to Koste. Koste thereafter procured a duplicate title to this car. Koste testified that in his opinion the 1951 DeSoto had a market value in February, 1958, of $200, and that after he repossessed the car and obtained a duplicate certificate of ownership he was offered only $100 for it because he did not have the original certificate. He afterwards sold the car for $125.

On cross-examination Koste testified as follows:

"Q. Now, Mr. Koste, when you gave Mr. Lesch your check for fifteen hundred dollars on Sunday, February 23rd, you gave him that check even though you had not seen the certificate of title, is that right? A. That's correct.

"Q. And you gave him that because you relied upon his assertions that he owned that car—that is, he was the owner of the car? A. Yes, that's right."

\* \* \* \* \* \*

"Q. And I believe you testified in the magistrate hearing that you considered that the deal was closed—it was your car except for the assignment of title. A. That's right."

Defendant in its brief concedes that Lesch knowingly violated a duty of his office in affixing his jurat to the purported application for transfer of title, but contends that relator's own evidence proves, as a matter of law, that his loss did not result from this violation of duty. Relator contends that the allowance by the court of substantial damages was proper for the reason that it was shown that Lesch affixed his jurat to an instrument which he knew contained false statements, upon which relator relied to his damage. On his appeal relator complains of the trial court's refusal to allow him damages and an attorney's fee under the vexatious refusal to pay statute (Section 375.420 RSMo 1949, V.A.M.S.).

The condition of the bond issued by defendant surety to Lesch is:

"Now, If The Said Theodore F. Lesch shall faithfully perform the duties of his said office, according to law, then this obligation shall be void, otherwise of full force and effect."

■ It was for a breach of the above obligation that this action was brought, and to make a case the burden rested upon relator to prove, first, that Lesch did not faithfully perform the duties of his office; and, second, that relator was injured and damaged as a result of such failure. State ex rel. and to Use of Wilkinson v. Central Surety & Ins. Corp., 232 Mo.App. 748, 112 S.W.2d 607.

Defendant relies upon the following Missouri authorities. State ex rel. Park National Bank v. Globe Indemnity Co., 332 Mo. 1089, 61 S.W.2d 733; State to Use of Alexander v. Plass, 58 Mo.App. 148; State to Use of Mathews v. Boughton, 58 Mo. App. 155 and State ex rel. Scruggs v. Packard, 199 Mo.App. 53, 201 S.W. 953.

In State ex rel. Park National Bank v. Globe Indemnity Co., supra, it appears that John A. Cattanach was the owner of certain real estate. Joseph E. Lasister forged a deed from Cattanach to W. T. Doerr, a fictitious person. Thereafter, R. L. Comstock, a notary public, at Lasister's request, certified to the acknowledgment of Doerr to a deed of trust on this land to secure a mortgage bond in the sum of $3,000. The notary was induced to execute this certificate of acknowledgment by Lasister having some one, impersonating Doerr, appear before him. The name of Doerr as grantor was written into the deed of trust by Lasister. The grantee named in the deed of trust was also a fictitious person. The Kansas City Title and Trust Company, relator's assignor, issued a guaranteed title policy in the sum of $3,000, and was obliged to pay that sum to the holder of the mortgage bond which the deed of trust purported to secure. On this state of facts it was held there could be no recovery on the notary's bond. The court said that the reason the title company suffered a loss was not because Doerr did not appear before the notary, but because Doerr did not have title to the property. For that reason the breach, by the notary, of the conditions of the bond could not be considered the proximate cause of the loss. It was pointed out that if someone by the name of Doerr had, in fact, executed the deed of trust and acknowledged the same before the notary, the deed would have been just as worthless as it actually was because Doerr did not have title. The title company would still have lost its $3,000. The court added that if someone who identified himself as Cattanach, the title owner, had executed the deed of trust, the notary would have been liable on his bond because if this acknowledgment were true, if Cattanach had signed the deed, title to the land would have been transferred and the title company would not have lost its money.

In the cases of State to Use of Alexander v. Plass, supra, and State to Use of Mathews v. Boughton, supra, decided by this court, the notary in each case was guilty of fraud; yet, this court held that the sureties were not liable because the purported grantors whose signatures were acknowledged by the notary in each case, did not, in fact, have title to the property described in the deeds.

In State ex rel. Scruggs v. Packard, supra, a decision by the Kansas City Court of Appeals, it appeared that relator loaned money on a note purportedly executed by one C. J. Gregory, secured by a purported chattel mortgage on 172 head of cattle in Barber County, Kansas. The notary public had certified to the acknowledgment of the mortgage by said Gregory. In fact, there was no such person as C. J. Gregory, and there were no such cattle. A man purporting to be C. J. Gregory actually appeared before the notary, and in certifying that the man so appearing was C. J. Gregory, the notary was negligent. It was held that the false certificate was not the proximate

cause of the damage and that the notary was not liable on his notary's bond.

The rule of State ex rel. Park National Bank v. Globe Indemnity Co., supra, has been applied in the following cases from other jurisdictions: Atlas Security Co. v. O'Donnell, 210 Iowa 810, 232 N.W. 121; Walter E. Haller & Co. v. Fouse, 62 Ohio App. 147, 23 N.E.2d 453; Lee James, Inc. v. Carr, 170 Wash. 29, 14 P.2d 1113; Fogleman v. National Surety Co., 222 Ala. 265, 132 So. 317; Governor of Wisconsin ex rel. Mlekus v. Maryland Casualty Co., 192 Wis. 472, 213 N.W. 287, 51 A.L.R. 1478 and Commonwealth, to Use of Ulshofer v. Turner, 340 Pa. 468, 17 A.2d 352.

It is our opinion that under the foregoing authorities relator cannot recover his loss in this action. The suit is for breach of contract against the surety on the bond, and, in such action defendant cannot be held liable for any damages except those, if any, which were caused by Lesch's official acts as notary. Lesch's official duty as notary was limited to certifying to these facts: (1) That Dorothy Meyer appeared before him, (2) that she signed the application for transfer of title, and (3) that she swore that the information set out therein was true. Lesch's failure to properly perform his duties in the above respects could not, under the authorities cited, be the proximate cause of relator's loss. If Dorothy Meyer had actually appeared before Lesch and had sworn to the truth of the facts stated in the application, Koste still would have suffered loss, for the reason that S & L Motor Company did not have title to the automobile. A notary's certificate can in no wise be deemed to certify or guarantee the facts stated in the instrument to which it is attached. To hold otherwise would make the surety on the notary's bond an insurer of all statements contained in the instrument notarized. That is not the law. Atlas Security Co. v. O'Donnell, supra. It was the fraudulent conduct of Lesch as a car dealer, and perhaps relator's own negligence, which caused the relator's loss, not Lesch's conduct as a notary.

But respondent contends that where, as in the case at bar, the notary acts fraudulently in affixing his jurat to an instrument which he knows contains false statements which are, by reason of the notary's certificate, relied upon by a person to his damage, the notary's conduct will be considered the proximate cause of said loss, even though, had the notary faithfully performed his official duties, the injured party would have suffered the same loss. Respondent has cited the following cases in support of this contention. State ex rel. Nelson v. Hammett, 240 Mo.App. 307, 203 S.W.2d 115; State ex rel. and to Use of Wilkinson v. Central Surety & Ins. Corp., supra; State ex rel. Meinholtz v. American Surety Co. of New York, Mo.App., 254 S.W. 561, and State ex rel. Matter v. Ogden, 187 Mo.App. 39, 172 S.W. 1172. We have carefully examined these cases. We find that the first three named clearly do not support respondent's contention. State ex rel. Matter v. Ogden, supra, does, on its facts, lend support to respondent's argument, although the opinion makes no distinction between fraud and negligence. It was in the later case of State ex rel. Scruggs v. Packard, supra, that the court distinguished the Ogden case from the case then before it on that ground. The distinction, in our opinion, is not valid. An action on a notary's bond is one for breach of contract, and on the issue of proximate cause it makes no difference whether the false certificate be the result of fraud or negligence. Governor of Wisconsin ex rel. Mlekus v. Maryland Casualty Co., supra. The plain fact of the matter is that the court in deciding the Ogden case failed to apply the proper rule for determining proximate cause, and in that respect is contrary to the opinion of the Supreme Court in State ex rel. Park National Bank v. Globe Indemnity Co., supra. We are bound to follow the decisions of the Supreme Court.

A case very much in point is State to Use of Mathews v. Boughton, supra. In that case relator was a money lender and Boughton was a notary. Relator had, for

a number of years, employed Boughton as his agent to loan out his money upon notes secured by deeds of trust on land. The manner adopted in effectuating such loans was that relator would place a certain sum of money into Boughton's hands, and Boughton would loan the money and remit the notes and deeds of trust taken to relator, with whom he kept a running account. Boughton forged a number of these notes, and the signatures of the deeds of trust, securing same. The persons whose acknowledgments to these conveyances he pretended to have taken as a notary had no existence. Relator sued on Boughton's bond for the amount of money lost in these phony transactions. It was held that no recovery could be had on the bond, since it appeared that the relator never parted with any value on the faith of Boughton's official acts, and that the damages relator suffered were the result of his own negligence. The court said:

"It thus appears from the relator's own evidence that he never parted with any value on the faith of Boughton's official acts. Boughton as the relator's agent sent to him a number of forged notes, and forged and fraudulently acknowledged deeds of trust, and on the faith thereof obtained certain credits on his account with the relator. It is difficult to see on what theory any liability on Boughton's *official bond* is to be enforced under these circumstances. The damages which the relator has sustained are the result of his own gross negligence, and the criminal conduct of his agent. It stands conceded that the persons whose names were forged by the relator's agent had no existence, and hence could have neither credit nor land, and there is no pretense that other persons of the same name owned the land described in the deeds or any land. Rejecting the question of agency altogether, yet the frauds of Boughton as far as his *official acts* are concerned were, as far as relator is concerned, mere *damnum absque injuria.*"

 It is our conclusion that under the authorities, relator is not entitled to substantial damages in this action. We also find there is no merit to relator's appeal wherein he complains of that part of the judgment denying recovery of damages and an attorney's fees under the vexatious refusal to pay statute (Section 375.420 RSMo 1949, V.A.M.S.). The judgment is reversed and the cause is remanded, with directions to the trial court to enter judgment for plaintiff for the amount of the bond to be satisfied upon payment to relator of one cent and costs.

WOLFE, P. J., and RUDDY, J., concur.